460 So.2d 533 (1984)
Sarah H. WILLIAMS and Robert D. Harrington, Jr., Appellants,
v.
Mary Ann H. HARRINGTON, Appellee.
No. 84-384.
District Court of Appeal of Florida, Second District.
December 12, 1984.
*534 Joe B. Cox and John F. Spindler of Cummings & Lockwood, Naples, for appellants.
Thomas E. Maloney of Maloney & Crane, Chartered, Naples, for appellee.
LEHAN, Judge.
In this proceeding involving a surviving spouse's petition to determine her elective share of her deceased husband's estate pursuant to § 732.201, Florida Statutes (1981), the residuary beneficiaries appeal a judgment granting relief requested by the surviving spouse. We reverse and remand.
We conclude that the trial court, by applying perceived equitable concepts to adjust the number of shares of corporate stock to be distributed to the surviving spouse and by adjusting the surviving spouse's elective share to compensate her for certain taxes incurred by her as a result of early, partial distributions, departed from the governing statutes. Also, we conclude that the trial court erred in accelerating the remainder interest in a trust after the trial court extinguished the surviving spouse's lifetime interest therein when the matter of that acceleration had been neither pleaded nor tried by implied consent.
As their first point on appeal, the residuary beneficiaries contend that the trial court erred in permitting the personal representative to use the same "blockage discount" on corporate stock to value that stock for two different purposes. The trial court used that same discount to value the net probate estate as of the date of decedent's death for the purpose of determining the amount of the surviving spouse's 30% elective share and to value that stock at the times of later distributions thereof for the purpose of determining the number of shares necessary to constitute that amount. The residuary beneficiaries contend that the evidence showed that the true blockage discounts at the times of those distributions were less than that at the date of death. They contend that the applicable statute provides for valuing distributions at the times of those distributions and therefore requires the use of lesser discounts at those times. We agree.
After decedent's will was admitted to probate, the surviving spouse chose to take a 30% elective share pursuant to section 732.201. A substantial portion of the estate consists of a large number of shares of corporate stock. That stock was thinly traded on the New York Stock Exchange. The sale of large blocks of stock of the size held by the estate would depress the sale price below the quoted market price. Therefore, to determine the fair market value of the stock the personal representative reduced the stock market price by a "blockage discount." A blockage discount is a reduction in the price or value of stock when the stock is to be sold in a block that is larger than that which can be sold at existing quoted prices because of a small average trading volume of the stock on a stock market.
The personal representative determined that $5.00 was the appropriate blockage discount to use in determining the fair market value of the stock on the date of decedent's death. The personal representative used that $5.00 discount to calculate, as of *535 the date of death, the value of the entire estate and of the 30% elective share.
The personal representative also used that same $5.00 discount to determine the value of shares distributed on several later dates to the surviving spouse in satisfaction of her elective share. The residuary beneficiaries, however, argued in the trial court and argue on appeal that smaller blockage discounts were applicable to the shares when distributed to the surviving spouse because the volume of trading in the corporate shares on the stock market had increased on the dates of distribution and because the distributions consisted of smaller blocks of stock than those on the basis of which the $5.00 discount was arrived at.
The personal representative testified that, for reasons of equity, the same $5.00 discount was used for all calculations. The personal representative also testified, however, that if the shares distributed to the surviving spouse had been sold on the market on the dates of the various distributions, the actual blockage discount would have been less than $5.00 and would have ranged from approximately $1.00 to $3.00 depending on the date. Of course, the smaller the discount the higher the value of the shares. A smaller discount at date of distribution would result in a higher share value and a lower number of shares to be distributed to constitute a given total value of the distributions.
In the amended final judgment, the trial court found that "the use of one blockage discount to value the net probate estate and a different blockage discount to value the same stock at time of distribution is not proper." We do not agree. The evidence showed that a blockage discount is a key factor bearing upon the actual market value of stock at a given time. If, as here, the application of a lower blockage discount results in a value per share which is higher on the date of distribution than on the date of death, this would mean that fewer shares would be distributed to satisfy the 30% elective share based upon the value of the elective share at date of death pursuant to section 732.207, Florida Statutes (1983). We use the terms "lower," "higher," and "fewer" in comparison with values of shares and numbers of shares distributed if the distribution had occurred on the date of death. The evidence indicates that the foregoing state of affairs is simply a result of changing stock market trading volumes and values.
The surviving spouse argues on appeal that the trial court might have applied the $5.00 discount to the distributed stock on the basis that the court actually had determined that a $5.00 discount accurately reflected market values at the time of the distributions. However, as noted above, the trial court explicitly found that the use of different discounts would not be proper. Nor have we been directed to, or found, evidentiary support which would fully sustain the surviving spouse's argument.
Accordingly, on remand we direct that the distributions to the surviving spouse be recalculated based upon the fair market values of the stock on the dates of distribution using appropriate blockage discounts on those dates shown by the evidence.
We need not address the well argued and arguable equitable contentions of the surviving spouse in support of the trial court's approval of the use at the dates of distribution of the same blockage discount which was applicable at date of death. The legislature has said in section 732.214, Florida Statutes (1983) that the values of assets distributed to satisfy that elective share shall be as of the date of distribution. Arguments that those values should be otherwise determined should be addressed to the legislature.
The surviving spouse argues that if we determine on this appeal that there was error in the amount of the blockage discount applied to the distributions to the surviving spouse, we should on remand provide that the trial court also reconsider the blockage discount applied to calculate the net probate estate  and therefore the value of the elective share  at date of *536 death. We cannot agree. There appears to be competent substantial evidence to support the $5.00 blockage discount applied to the valuation at date of death. The only reason for the surviving spouse's request that, if there was to be remand, the trial court also revisit the date of death blockage discount appears to be to give the surviving spouse the opportunity to argue before the trial court essentially what she has argued and we have ruled upon on appeal: that an adjustment should be made in the respective values at date of death and date of distribution for equitable reasons, notwithstanding what we perceive to be the mandates of section 732.207 and 732.214.
The second point on appeal concerns an adjustment to the elective share which was made by the trial court to compensate the surviving spouse for certain income tax she paid.
During the second fiscal year of the estate, the surviving spouse requested and received distributions of stock and cash. No distributions were made during that year to the residuary beneficiaries. For federal income tax purposes, distributions from an estate during a fiscal year are taxed as income to the distributee up to the total amount of income earned that year by the estate's assets, even if the distributions were actually of estate assets and the earned income was retained by the estate, as in this case. See 26 U.S.C. §§ 661 and 662. The result here was that the surviving spouse became liable for taxes on that portion of her distributions equal to the income earned by the estate, even though the estate retained the income.
The surviving spouse asked the trial court to increase her share of the estate to compensate her for the foregoing tax she paid on income retained by the estate. The trial court agreed and ordered that she would receive an "equitable adjustment" equal to the benefit accruing to the estate and the residuary beneficiaries by reason of her payment of the tax.
The residuary beneficiaries contend on appeal that the equitable adjustment was improper. They make two arguments in support of their contention. First, they argue that section 732.207 Florida Statutes (1981), provides that the spouse's elective share will be 30% of the estate and neither that section nor any section of the Florida Probate Code provides for the type of adjustment contended for here. Second, the beneficiaries argue that, although a personal representative has a duty not to make distributions which cause an unequal burden among the beneficiaries, there was no such duty in this case because the surviving spouse, being fully aware and informed of the tax consequences, requested the personal representative to make the distributions which caused the foregoing tax consequences.
We agree with the residuary beneficiaries. Again, we need not address in more detail the nature of the arguable equitable contentions. The legislature could have included a provision in the statutes authorizing this type of tax adjustment to the elective share, but it did not. The legislature did make provisions for other types of tax consequences relative to elective shares, see section 732.215, but, we must assume, chose not to provide for the type of adjustment at issue here. Arguments of the type made by the surviving spouse in this regard should be addressed to the legislature.
Also, the basis for a tax adjustment such as that contended for in this case is the asserted duty of a personal representative to act with impartiality toward all beneficiaries. However, the personal representative in this case did not make a solely discretionary distribution to the surviving spouse; the distribution was made at her request. The record supports the residuary beneficiaries' argument that the surviving spouse acted in that regard with professional advice. We cannot conclude under the facts of this case that the personal representative violated a duty to the surviving spouse to change the effect of the action she herself requested.
*537 The trial court relied upon Cooper v. Parkinson, 186 So.2d 844 (Fla. 1st DCA 1966), in ordering the equitable adjustment. In Cooper, a widow elected to take a dower share of the estate, which was one-third of all estate assets and income. The widow and the executor entered into an agreement preserving the widow's "right to claim compensation from the Executor because ... she will be required to pay Federal income taxes on moneys already distributed to her by the Executor." 186 So.2d at 845. The widow sued to recover for the taxes she had paid on the estate's share of income. The trial court denied the requested relief. The appellate court reversed.
We are not persuaded that we should apply Cooper to produce a result contrary to that which we reach in this case. First, in Cooper, as contrasted with the instant case, the First District Court of Appeal specifically noted that the surviving spouse had "by the mentioned agreement preserved her right to pursue her claim for reimbursement from the estate." Id. at 846. Also, Cooper concerned dower, not a surviving spouse's elective share as in the case at hand. But, to the extent that the Cooper rationale may seem to call for an equitable adjustment in a situation like that before us, we would disagree with that rationale. Again, this is a matter for the legislature which has in some detail addressed the subject at hand.
We do not feel it is necessary to undertake here a detailed analysis of the many facets of the subject of so-called "equitable adjustments" as is done, for example in Carrico and Bondurant, Equitable Adjustments: A Survey and Analysis of Precedents and Practice, 36 Tax Lawyer No. 3, 545 (1983), one of the various writings on the subject to which we have been cited. We recognize that generally, in the final analysis, the conflicting policy considerations for and against employment of equitable adjustments in cases of this kind might be thought of, as the foregoing article does, as placing one on "the horns of the basic ... dilemma: to maximize fairness to beneficiaries, should equitable adjustments be made whenever possible, or to maximize simplicity in administration, should they be avoided in the absence of gross inequities?" Id. at 547. Suffice it to say that with respect to the issue before us under the facts of this case we consider this area of the law to be primarily legislative in nature. The result we reach follows not only a literal interpretation of the relevant statutes but also follows what we perceive to be the plain meaning of the Florida legislature in enacting statutes in an area which is within its constitutional authority to legislate.
For us to embark upon the task  and to, in effect, call upon trial courts in like situations to embark upon the task  of adjusting the statutory scheme to accommodate perceived equities would, we believe, not be a proper judicial role. See Price v. Florida National Bank of Miami, 419 So.2d 389 (Fla. 3d DCA 1982) where the Third District Court of Appeal followed the literal and plain meaning of sections 732.207 and 732.214 and held that a surviving spouse was not entitled to interest accruing to his elective share prior to the date of the order of distribution of that share, notwithstanding a substantial lapse of time between the date of decedent's death and the date of that order of distribution. We do not believe it is the proper role of the courts in a case like this to undertake to engraft additional components onto a legislative scheme which must be assumed to have been enacted advisedly. The provisions of sections 661 and 662 of the Internal Revenue Code were in effect at the time the Florida legislature enacted the relevant provisions of the Florida Probate Code, including the above referenced provisions of section 732.215 as to other types of tax consequences regarding elective shares.
The third point on appeal relates to a Massachusetts charitable "unitrust" created by the deceased of which the surviving spouse had been made a lifetime beneficiary. On the basis that her elective share was fulfilled by assets other than her interest *538 in the unitrust, the trial court extinguished her interest in the unitrust in the amended final judgment. The amended final judgment also provides that the charitable remainder interests in the unitrust were therefore accelerated.
The residuary beneficiaries' position apparently is that they were adversely affected by that ruling in that, as a result of the acceleration, the charitable remaindermen then would receive income from that trust which the residuary beneficiaries could have otherwise claimed during the lifetime of the surviving spouse. The residuary beneficiaries contend on appeal, among other things, that the court erred in its ruling because the issue of the acceleration of the remainder interests was neither raised in the petition nor tried in the trial court. We agree. The surviving spouse concedes that she has no financial interest in this issue and does not argue it. On remand the trial court should strike that portion of the amended final judgment which provides that "the remainder interest in the unitrust is accelerated."
Reversed and remanded for proceedings consistent herewith.
RYDER, C.J., and SCHOONOVER, J., concur.