# IN RE: ESTATE OF LEWIS E. IANDOLI
## Case No. 82-0699
Seventeenth Judicial Circuit, Broward County

January 31, 1986

## APPEARANCES OF COUNSEL

**John W. Douglass** for personal representative Angelina Iandoli.

**Cecil T. Farrington** for personal representative Angelina Iandoli.

**Carl H. Hoffman, Hoffman & Hertzig,** for respondent Marie Iandoli.

## OPINION OF THE COURT

RAYMOND J. HARE, Circuit Judge.

### FINAL JUDGMENT APPROVING SALE OF SHOPPING CENTER TO PERSONAL REPRESENTATIVE

This proceeding was tried before the Court. On the evidence presented,

THE COURT FINDS:

1. The Personal Representative (hereinafter P.R.) here petitions for approval of a sale to the P.R. of the Oceanside Shopping Center, which is the principal asset of the probate estate. The Petition also seeks judicial approval of the sale to the P.R. of the three other probate properties, namely: (i) The decedent's non-exempt jewelry. Sale of the jewelry has been approved by the Court pursuant to a stipulation of the interested persons. (ii) The non-exempt furnishings located in the decedent's homestead. That issue has been severed and trial thereon deferred. (iii) The portion of the decedent's homesite which exceeds the constitutional half acre, consisting of 8,585 square feet. This issue has also been severed and deferred for later determination.

2. The decedent's Will devises one-half of the estate to ANGELINA IANDOLI, the surviving spouse, who is the P.R., and the other one-half to MARIE IANDOLI, the decedent's daughter by a prior marriage.

3. As part of the Plan of Distribution which the P.R. attached to her Petition for Discharge filed November 22, 1983, the P.r. filed four Petitions to resolve judicial questions of which the Petition for approval of sale of assets to the P.R. is the fourth to be heard by the Court. Appellate review of Final Orders or Judgments on two of the Petitions are pending and such review of Final Orders or Judgments on other Petitions may occur.

4. The decedent's Will grants to the P.R. a general and unlimited power of sale. The P.R. therefore can sell the shopping center, in the P.R.'s discretion, without Court approval, F.S. 733.613(2). However, the proposed sale to the P.R. would be voidable by any interested person unless the transaction has been approved by the Court after notice to interested persons, F.S. 733.610. The P.R. here seeks such approval after due notice. This proceeding has been declared to be an adversary proceeding.

5. The shopping center is located on the following described real property situate, lying and being in Broward County, Florida, to-wit:

Those portions of the East one-half (1/2) of the Southwest one-quarter (SW 1/4) of the Southeast one-quarter (SE 1/4) of Section 31, Township 48 South, Range 43 East, Broward County, Florida, described as follows:

PARCEL 1: The West 155 feet of the North feet of the South 470 feet, less the West 25 feet thereof.

PARCEL 2: The South 470 feet less the South 50 feet, less the West 155 feet and less A-1-A Right-of-way.

2

*PARCEL 3:* The East 100 feet of the West 275 feet of the North 48 feet of the South 518 feet.

*PARCEL 4:* Beginning at a point on the East boundary of said East one-half (E 1/2) of the Southwest one-quarter (SW 1/4) of the Southeast one-quarter (SE 1/4), 470 feet North of the Southeast corner of said East one-half (E 1/2) of the Southwest one-quarter (SW 1/4) of the Southeast one-quarter (SE 1/4); thence Northerly along the East boundary of the said East one-half (E 1/2) of the Southwest one-quarter (SW 1/4) of the Southeast one-quarter (SE 1/4), on a bearing of North 0 degrees 04' 20" East, a distance of 98.27 feet to a point; thence Westerly on a bearing of North 90 degrees West, a distance of 134.276 feet to a point; thence Southwesterly, along the arc of a circular curve to the left, having a radius of 2824.79 feet, an arc distance of 98.535 feet to a point; thence Easterly on a bearing of North 90 degrees East, a distance of 141.253 feet to the Point of Beginning.

### AND ALSO

*PARCEL 5:* Lots 1, 2, 3 and 4, Block 13, POMPANO BEACH, according to the plat thereof, recorded in Plat Book 2, page 93, of the Public Records of Palm Beach County, Florida; said lands situate, lying and being in Broward County, Florida.

*PARCEL 6:* Lots 1 and 2, Block 5, POMPANO BEACH PARK, according to the plat thereof, recorded in Plat Book 21, page 20, of the Public Records of Broward County, Florida, less the North 15 feet thereof.

6. By agreement of the interested persons, the proceedings under this Petition were bifurcated into two separate Judgments, of which this is the second Judgment. The first Judgment, which is dated January 27, 1986, determined that the 1982 and 1983 payments of estate tax by the P.R., which tax was attributable only to and payable only from the daughter's share, so reduced the size of her then vested share that the daughter's pro rata share of the estate's pool of assets which remained after the tax was paid was reduced to 40.095 of the after tax pool instead of 50%. At the same time, the widow's share of the pool of assets which remained after the tax was paid and which share was not reduced by the tax, remained constant in size so that its percentage of the estate's after tax pool of assets was increased to 59.91%.

3

7. The daughter's interests in this two stage proceeding were fully represented in a truly adversary contest. The pleadings were challenged, discovery proceedings were intensive and extensive, and the trial before the Court consumed four days.

8. Since the Will gave the P.R. an unlimited power of sale, there would have been no need to invoke the Court's jurisdiction for approval of the sale except for the conflict of interest provisions of F.S. 733.610, making the sale voidable without Court approval. The scope of the probate Court's intervention is explained in *In Re Granger Estate* 318 So.2d 509, 511 (Fla. 1st DCA 1975), as follows:

> "[3] Under the statute, an executor, proceeding pursuant to a general power of sale, need not seek a court order of confirmation, but if he does, it would be fallacious to say that the court is powerless to do more than give a rubber stamp approval. Under such circumstance, although the probate court may not consider necessity, it may consider such things as adequacy of consideration, whether or not the transaction is in good faith, whether or not the sale will benefit one or more beneficiaries to the detriment of others and whether or not there is fraud involved."

9. Applying these criteria to this proceeding, the Court finds that the consideration to be paid by the P.R. is not inadequate. At the trial the P.R. presented the testimony of two qualified appraisers, both members of the American Institute of Appraisers with M.A.I. certification, who, following extensive investigation and research of voluminous facts and data, determined according to standard appraisal methodology that the current fair market value of the shopping center is $6,800,000.00. The inventory value was only $4,080,000.00. The P.R. has offered to purchase the shopping center on the basis of a $7,000,000.00 purchase price, less credit for her proportionate share.

10. The P.R. is acting in good faith in her proposal to purchase the shopping center. She is the widow of the decedent and participated personally on the premises with the decedent in the management of the center for the last ten years of her 22 year marriage to the decedent. The P.R. desires to own the entire property instead of a fractional share. Her adeptness as manager is demonstrated by the fact that she furnishes on site management and maintains 100% tenant occupancy with excellent tenant morale and rents received are equal to or higher than those realized from comparable properties. The P.R. has almost doubled the rental income during her four year service in spite of two pre-existing long term leases covering substantial portions of the property, the rental of which could not be increased. The Court finds

4

against the daughter's contention that the P.R. has not been an effective manager and that larger rental increases with outside management should have been obtained, thereby increasing the value of the center. The Court finds that outside management and increased rents would have resulted in less net revenues due to vacancies and lower tenant morale.

11. The P.R.'s good faith in desiring full ownership of the shopping center is further demonstrated by her incompatible relationship with the daughter, who would be a fractional owner with the P.R. if the property were distributed in kind. Throughout the four year administration of this estate the P.R. and the daughter have litigated and are litigating many separate adversary proceedings arising out of the probate of the estate which involve issues not relevant to this proceeding but which are relevant to the overall Plan of Distribution. The P.R. and the daughter cannot effectively operate (either personally or with outside management) the shopping center as co-owners and the widow has made it eminently clear that if distribution in kind of the center were to be made so that she became a tenant in common with the daughter, then the widow would immediately assert her statutory right to maintain a partition action, which would result in a sale of the property since it cannot be partitioned in kind without prejudice to the owner.

12. The shopping center which is 6.37 acres in total area is comprised of three parcels of land. The East boundary is a public road which fronts on a public Atlantic Ocean beach. The Westerly boundary borders on the Intracoastal Waterway. The parcels are intersected by public roads. Use of each parcel as a part of a unified shopping center is dependent on the other two parcels in such manner and to such extent that it is impractical to sever the ownership of any parcel. The property cannot be allocated to one beneficiary because the estate does not contain enough other assets to distribute cash or other property to the other beneficiary.

13. The proposed sale does not benefit one beneficiary to the detriment of the other. It is necessary that one beneficiary buy out the other or that the entire property be sold to a third party and the proceeds divided. In any event, a sale is imminent. The daughter opposes the sale because it will result in a capital gain which would not occur if the property were distributed in kind and not sold. This objection does not address benefit to one beneficiary and detriment to the other. The daughter's objection is, in effect, a challenge to the P.R.'s basic right of sale under the Will. Under the quoted language in *Granger* [supra] the Court may not consider the necessity of the sale

**5**

where the power of sale is granted in the Will. See also Sec. 733.613(2), F.S.:

"The sale, mortgage, or lease need not be justified by a showing of necessity, and the sale, pursuant to power of sale shall be valid." More than two years have elapsed since the Petition was filed and the daughter has made no firm offer to buy out the P.R.'s share in the shopping center. If the P.R. is permitted to purchase the daughter's share of the center and have distribution in kind of the P.R.'s share, there will be no detriment to the daughter because capital gains tax will be due from the estate on the inevitable early sale of the daughter's share whether or not the P.R. buys the center.

14. No issue of fraud has been raised by the pleadings or the evidence, and the Court finds that fraud is not involved in the proposed sale to the P.R.

15. The general and unlimited power of sale in the Will has the effect of abolishing any right the daughter might have to in kind distribution, F.S. 733.613(2) and F.S. 733.810(1). However, even without the general power of sale, the daughter's right to in kind distribution would have been eliminated because it is not practicable to distribute undivided interests in the property to the widow and the daughter for the reasons mentioned above, F.S. 733.810(1)(b).

16. Under all judicial questions are resolved by final orders or judgments of this Court in the administration of the above estate, and the mandates of the District Court of Appeal are filed for all appeals from such final orders or judgments, it is impracticable to devise a Plan of Distribution. In that Plan due consideration must be given for interested persons in several substantial and critical matters affecting the Plan of Distribution which have arisen and will arise in the administration of this estate, such as: tax avoidance, the determination of and assessment of large contested attorneys' fees for all interested persons, court costs, and other expenses which are to be taken into account and other matters. Such matters are inter-related and mutually interdependent as to determination and disposition. It therefore may not be practicable or proper to make partial distribution of assets at this time. To do so may expose interested persons to the danger of unexpected inequitable results. The P.R. has a duty to administer the estate in such manner that all interested persons are treated fairly and impartially. *Williams vs. Harrington* 460 So.2d 533 (Fla. 2d DCA 1984). In order to do so the P.R. has discretion as to the time of distribution of assets.

IT IS ADJUDGED AS FOLLOWS:

17. The sale of the real and personal property constituting the Oceanside Shopping Center to the P.R., in the manner and on the terms set forth in the Petition, is hereby approved for the purpose of compliance with F.S. 733.610, provided that the present shares of the beneficiaries are the shares defined by the Court in its Final Judgment Determining Shares of Beneficiaries in Shopping Center dated January 27, 1986, and provided further that the sale price is to be computed on the basis of $7,000,000.00 as the evaluation of the complete unapportioned property included in the sale.

18. This approval of the sale constitutes it a fixed and final contract for sale and purchase. The closing of the sale and conveyance of the property shall constitute a phase of the Plan of Distribution and shall occur at such time as the P.R. determines to be in the best interest of the estate.

ORDERED at Fort Lauderdale, Florida, this 31st day of January, 1986.