The Chancellor.
Hannah Johnson, the mother of the complainant, died in the year 1811. At the time of her marriage with the complainant’s father, Robert Johnson, she was seized and possessed of a very large and valuable estate in the county of Salem. During the coverture, she joined with her husband in the conveyance of a part of this estate, for the consideration of twenty thousand dollars, which consideration was received by her husband, and by him expended in the improvement of real estate which he held in' his own right. At her death, the value of the real estate which Hannah Johnson left was about eighty thousand dollars. She left two children, who inherited this estate, the complainant and his sister, Anna G. Hubbell, one of the defendants to this suit. By the then existing laws of this state regulating descents, the complainant was entitled to two-thirds, and his sister to one-third, of the estate which they inherited from their mother. Robert Johnson, the father, being tenant by the curtesy, was in the possession of the real estate of his wife, and received the rents and profits up to the time of his death, in 1850. Before the complainant came of age, his father complained to his son of the inequality of the disposition made by the law of his mother’s estate, and expressed to him his washes, that when his son should arrive at age, he would divide his mother’s property equally with his sister ; and his father said to his son, if he v'ould make such equal division, then that he would leave his estate equally between his two children, and that if his son did not so divide it, then he would feel constrained to make, by will, an unequal division of his own estate between his son and daughter, and leave the larger portion to his daughter. The daughter was present at this time, and expressed her concurrence in the views of her father.
Shortly after the complainant came of age, the father took his two children into his private office, and thero produced and laid before them the title papers and maps *334 of their mother’s estate, and also of his own real estate, and explained to them the location and value of the respective portions, and urged the complainant to divide equally with his sister their mother’s estate. The father then agreed and promised, in the presence of his daughter, that if his son would execute the necessary deeds for an equal partition of the mother’s estate, that he would leave all his own property equally to his children, share and share alike. He at the same time declared, that if his son refused to comply with his wishes, that he would leave his estate to his daughter, which would make her share in both estates more than equal to his son’s. Ta consideration of the promise and agreement so made by his father, the son agreed that an equal division of his mother’s estate should he made between himself and sister, and that the father should make the division so agreed upon.
To carry out the agreement, deeds were drawn and prepared, under the direction of the father. After the papers were prepared, he called his children again into his office, and there remarked to the officer, who was then present to take the acknowledgments of the deeds, that, it was unnecessary to enter into a minute explanation of the character of the deeds, as his children knew all about them. Mutual releases, between the son and daughter, were then executed to complete the division. These papers were executed, and hear date the 7th of September, 1833.
On the 12th of October, 1836, Anna G-. Hubbell conveyed to her father a part of the land, which, in the division, was released to her by the complainant, and known by the name of the “ Guinea farm.” The consideration expressed in the deed was $2000. The actual value of the farm was $20,000.
On the 20th of April, 1850, Robert Johnson made his last will, by which he entirely cut off and excluded his son from all right and participation in his estate therein *335 devised. As to the “ Guinea farm,” he died intestate. All the rest of his property, which was a very large and valuable real estate, he disposed of by his will. A very large portion of it he devised to Ms daughter for life, and at her death to her three children in fee simple, or in case of their death to other devisees named in the will. The residue of his real estate mentioned in the will, the testator devised to his two nephews, Thomas and Andrew Sinnickson.
Robert G. Johnson died in October, 1850, and the devisees are in possession under the will.
These are the facts stated in the hill. The hill is demurred to, and these facts must be taken as true. The bill prays that the agreement between the complainant and the said Robert G. Johnson may be specifically performed and carried into execution by the defendants, and they be decreed to convey to the complainant the equal one half part of the estate of the said Robert G. Johnson; or, if it should he deemed more equitable and just, that the said Anna G. Hubbell he decreed to reconvey to the complainant the land which she received from the complainant as the consideration for the performance of his part of the said agreement.
There can he no doubt hut that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can he assigned why bo may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by a conveyance to be made at some specified future period or upon the happening of some future event. It may be unwise for a man, in this way, to embarrass himself as to the final disposition of Ids property, but he is the disposer, by law, of his own fortune, and the sole and best judge as to the time and manner of disposing of it. A court of equity will decree *336 the specific performance of such an agreement upon the recognised principles by which it is governed in the exercise of this branch of its jurisdiction. In the case of Rivers against The Executors of Rivers (3 Dessau. Rep. 195) the court, in sustaining the propriety of a court of equity’s recognising and enforcing such an agreement, very properly remarked, that a man might renounce every power, benefit, or right which the laws' give him, and he will be bound by his agreement to do so, provided the agreement be entered into fairly, without surprise, imposition, or fraud, and that it be reasonable and moral.
In Izard v. Executor of Izard (1 Dessau. Rep. 116) there is a note to the case, in which most of the old authorities bearing upon this subject are collected. There are two classes of authorities there collected, one of which relates to the subject of agreements by two parties to make mutual wills in favor of each other, on certain contingencies j and the other, in which courts of equity have decreed the specific performance of agreements connected with testamentary or other settlements. In addition to the cases cited in this note, I would refer to the case of Lord Walpole v. Lord Oxford (3 Ves. 402), and the same case in (7 D. & E. 138), and Lewis v. Maddocks (6 Ves. Jr. 150); Fortescue v. Hannah (19 Ves. 71), and a note in which a report of the case of Jones and wife v. Martin (3 Anst. 882) is given at length; Podmore v. Gunning (9 Sim. 644); Moorhouse v. Colvin (9 E. L. & E. Rep. 136).
The case of Jones and wife v. Martin was this: By articles executed upon the marriage of Mr. and Mrs. Jones, the father of Mrs. Jones covenanted to leave her, upon his death, certain tenements; and that he would at his decease, by his will, give and leave her a full and equal share, with her brother and sister, of all his personal estate, to be held and enjoyed immediately after the decease of himself and his wife, and not before. The father, for the purpose of defeating the articles of settlement, conveyed a large part of his property, consisting of East India stock, *337 to Ms son. On appeal, it was decreed that the stock and dividends were subject to the covenants. In the case of Fortescue v. Hennah (19 Ves. 66) it was determined, that where a father, by indenture, covenants for an equal division, at his death, of all the property he should die seized or possessed of between his two daughters or their families, though he retains the power of free disposition by act in his life, cannot defeat the covenant by a disposition in effect testamentary, as by reserving to himself an interest for life. Following the principles established by these authorities, it was decided in the case of Rivers against River’s executors, before referred to, that where a woman about to marry a man had agreed in writing to renounce all claims on his estate on his agreeing to make adequate provision for her, and had made provision for her by will and deed, that the court would see the agreement executed by enlarging the provisions, if, in the opinion of the court, it was not an adequate provision in proportion to the estate. The authority established in all these cases has recently been very fully recognised in the House of Lords, in the case of Logan v. Wienholt (7 Bligh’s R. 53, 54,) and the substance of which is given, as follows, in 2 Story’s Eq. § 786. If a person covenants, or agrees, or in any other manner validly binds himself to give to A., by his will, as much property as he gives to any other child, he may put it out of his power to do so by giving away all his property in his lifetime; or, if he binds himself to give to A. as much as he gives to B., by his will, he may, in his lifetime, give to B. what he pleases, so as, by his will, he shall give to A. as much as he gives to B. But then the gifts which he makes in his lifetime to B. must be out and out. For if, to defraud or defeat the obligation which he has thus entered into, he gives to B. any property, real or personal, over which he retains a control, or in which he reserves an interest to himself, then, in order to protect the agreement or obligation, and to prevent Ms escaping, as it were, from his own contract, *338 courts of equity will treat this gift to B. in the same manner as if it were purely testamentary, and were included in a will; and the subject matter of the gift will be brought back, and made the fund out of which to perform the obligation. At all events, it will be made the measure for calculating and ordering the performance of, and dealing with, the claim arising under the agreement or obligation.
This agreement, then, made between the complainant and his father was a legal agreement. And this court should decree its execution, if, in the exercise of its legal discretion, it can do it-without violating any principle of equity or doing injustice to any third party who may be innocently involved in the transaction. Generally, the agreement may be enforced without any embarrassment. If A. enters into an agreement, for which he receives a good consideration with B., to give him his property by will, and in violation of his agreement he gives it, by his will, to 0., the court will declare C. a trustee for B. In doing this, it does O. no wrong. A. having undertaken to make to O. a voluntary gift of that which he had no right in law so to dispose of, the court does O. no injustice, and violates none of his rights, by declaring him a mere trustee. To permit C. to hold the property as against B., the court would sanction the fraud which A. had committed in disposing of the property in violation of his agreement.
Several objections are made to the court’s decreeing a specific performance in this case, in addition to the general one which I have considered.
It is said, that this agreement was in parol, and is therefore contrary to the statute of frauds. But although this agreement was a mere parol one, if there was a part performance of it, of such a character as, upon the principles recognised and acted upon by this court, will take a parol agreement out of the statute, then there is nothing peculiar about an agreement of this kind to exclude it from the operation of those principles. If one party to a parol *339 agreement lias wholly or partially performed it on his part, so that its nonfulfilment by the other party is a fraud, the court will compel a performance. In this case, the son performed his part of the agreement. He paid a valuable consideration, and parted with his property. In fact everything was done and performed by both parties that the character of the transaction would admit of. The part of the agreement which the son was to perform was to be performed in preesenti, and that part to be performed by the father was to be performed in futuro. There is no uncertainty about the agreement in the slightest respect. It is definite and certain in every particular. It is specifically set out by the complainant in his bill, and the agreement, as alleged, is admitted by the demurrer. There is no objection to a decree on the ground of the contract not being in writing.
It was again objected, that the peculiar character of the contract is such as should induce a court to refuse its aid in carrying it into execution, that it was a mere promise made by a father to his son, and ought not to be looked upon as a binding agreement; and that it is bad policy for the court to recognise an agreement, made between a father and son, that the father will devise to his son the whole, or aDy considerable portion of his property; that such an agreement has a tendency to destroy that mutual relationship which ought to exist between father and son, and should not, therefore, be sanctioned by a court of equity. I do not consider the agreement in question objectionable upon any of these considerations. It cannot be regarded as a mere promise, which the son relied upon as such, and trusting alone to the honor and word of his father. Here was the son just of age, the owner of a large and very valuable property which he inherited from his mother. There were but two children, and the father was himself possessed of a large estate. He was desirious of a family arrangement with regard to both estates. He pressed the propriety of it upon his son while he was yet *340 in his minority and under his parent’s control. He solicited and insisted upon the arrangement after his son arrived of age, and he enforced his wishes, and exerted his parental authority, by declaring to his son, that if he refused to make the arrangement, he should be disinherited and cut off from all share in his father’s estate. He fixes the terms of the agreement himself. He requires of his son, as his part of the agreement to be performed, that in this family arrangement he shall part with one-sixth of his estate. An agreement or family arrangement like this is favored in a court of equity. Marriage settlements and agreements for family arrangements with respect to property are viewed with favor by this court. They ought to be respected and scrupulously carried out by the parties to them, and if they are not, a court of equity ought to enforce their execution. Hoes it not present a case for the favorable consideration of a court of equity, where a son arriving of age, entitled in his own right to a large estate, obedient to parental authority, enters into a family arrangement with his father, at the father’s request, by which he parts with a valuable portion of his inheritance, and that son afterwards, without any reason, disinherited by his father, comes into a court of equity to ask that the family arrangement may be carried into execution ? As far as the circumstances of that arrangement are before the court, it appears to have been an equitable one, and perfectly proper, and that gross injustice has been done to the complainant, by his father’s refusing to comply with his agreement, and to carry out fairly the family arrangement, which was made at his solicitation, accompanied with all the persuasion and influence of parental authority. The complainant is certainly entitled to some relief; and if there is any insurmountable difficulty in decreeing the agreement to be specifically performed, the court will endeavor to give him relief in some other shape.
There are difficulties in the way of enforcing the performance of this agreement specifically, which appear to *341 me to be insurmountable. The complainant has a right to the protection of this court, and to its aid in establishing and enforcing his rights. But if that protection and aid cannot bo afforded him without invading and disregarding the rights of others, this court may not, in its anxiety and desire to relieve one party, inflict a wrong and injury upon another entirely innocent in the transaction.
The agreement on the part of the father was, that he would leave all his property equally between his two children, the complainant and his sister. The father has violated his agreement as to both, and has dissapointed the expectations as well of his daughter, as of the complainant, his son. But it is manifest that this court cannot decree the daughter entitled to one half of the property. She was no such party to the agreement as entitled her to have it specifically enforced for her benefit. She agreed to nothing on her part; there was nothing on her part to be performed. She received the consideration which her father exacted for his part of the agreement. She was benefited, and not injured, by the agreement, as far as it was performed. Suppose the court should declare that the complainant has an attaching equitable trust in the testator’s estate in the hands of the devisees under the will, and is entitled to one half that estate. Of such a decree the grandchildren or nephews, who are devisees, would have no right to complain, because what the testator devised to them he had no right so to dispose of. He had agreed to dispose of it otherwise, and the party to that agreement claims the benefit of it. But not so with Mrs. Hubbell. By the agreement, she was to have one equal part of the estate with her brother. She has been disappointed, as well as he, in her expectations, and she has only a life estate in a part, instead of a fee simple in one half the property. How can I cai*ve out of this estate, devised as it is, the portion which the complainant claims without doing an injury and injustice to Mrs. Hub- *342 bell ? Mrs. Hubbell is not in any way responsible for tbe will of .her father. It is not alleged that she controlled him, or endeavored to control him, in making his will. She is an innocent party, and entitled as much to tbe protection of tbe court as tbe complainant. Suppose I was to take out of this estate one balf of it for tbe complainant, I could not alter tbe character of tbe estate wbicb tbe devisees have under tbe will to tbe other balf. Mrs. Hubbell then would necessarily have a life estate only in a little more than one balf of what is given her by tbe will; and yet, retaining all tbe will gives her, it is not equal to tbe absolute property in one balf of tbe estate, wbicb, if tbe agreement bad been performed, she would have been entitled to.
How although tbe agreement upon wbicb tbe bill is filed is a legal one, it does not follow that a Court of Chancery will decree its specific performance. It is not a matter of right, in either party, that tbe court should make such a decree; but it is a matter of discretion in tbe court, wbicb withholds or grants relief, according to tbe circumstances of each particular case, when tbe general rules and principles which govern tbe court will not furnish any exact measure of justice between tbe parties. 2 Story’s Eq. Ju. 742. Courts of equity will not enforce tbe specific performance of a contract at tbe instance of a vendor, "where his title is involved in difficulties wbicb cannot be removed, although it may be a case where, at law, an action may be maintained for damages; or, in a case where tbe character and condition of tbe property, to wbicb tbe contract is attached, have been so altered, that the terms and restrictions of it are no longer applicable to tbe existing state of things ; or, in cases where, from a change of circumstances or otherwise, it would be unconscientious to enforce it. Tbe proposition may be more generally stated, that courts of equity will not interfere to decree a specific performance, except in cases where it would be strictly equitable to make such a decree. 2 Story’s Eq. Ju. § 749, 750, and notes.
*343 In this case, the situation of the property to which the contract is attached is such, and the rights of third parties are so involved in the subject matter of the controversy, as to render it extremely embarrassing and difficult to carry into effect a decree for specific performance. I arrive at this conclusion with less reluctance than I otherwise should, from the consideration that the complainant is not entirely remediless in the premises.
The consideration of the agreement on the part of the complainant was, that he should convey to his sister one-sixth part of his inheritance which he had received from his mother. Mrs. Hubbell was present when the arrangement was made. It was a family arrangement, made between the father, son, and daughter. The daughter assented to it; and to carry out the family compact, she accepted from her brother a conveyance of the land, which was the performance of his part of the contract. She accepted it upon the terms of the agreement, which terms, if faithfully carried out, would have conferred additional benefits upon herself as well as her brother. The family arrangement has not been carried out, and it is against equity and good conscience that the sister should continue in the enjoyment of her brother’s land without compensation or satisfaction.
There are several objections interposed to this form of relief. It is said no fraud is imputed to any of the parties at the time of making the agreement, and no fraud is alleged to have been committed by Mrs. Hubbell since; that Mrs. Hubbell made no promise which was to be fulfilled on her part, and that she is not responsible for the nonfulfilment of the agreement by her father.
The fraud of the father was in not making his will, and dividing his estate between his children. It does not divest the breach or nonfulfilment of the contract of its fraudulent character because the fraud was not meditated at the time the agreement was made. The fraud of the daughter consists in retaining her brother’s land without consi *344 deration, which is against good conscience. It is to protect the complainant against this fraud that this mode of relief is proper. That Mrs. Hubbell made no agreement or promise with her brother that she would be responsible that the contract should be carried out, does not make it the less unconscionable that she should hold her brother’s land, conveyed to her under a family compact made for their mutual benefit, which has failed of execution through default of either of them, but of a third party. She accepted the iand under the family arrangement ; that arrangement has fallen through. The position of the complainant is of some consideration with the court. She was one of the heirs at law of Robert G. Johnson. Tie is not only a sufferer by the father’s violation of the agreement, but without cause has been disinherited ; and that which in law and justice belonged to him by his double right as heir and by contract, is all, or nearly all, bestowed upon his sister and her children. Under such circumstances, to permit the sister to enjoy, without any consideration, a part of that inheritance which the complainant derived from his mother is unjust, and a court of equity ought to prevent it.
This relief the complainant is not entitled to under the present bill, as it is framed. The demurrer is therefore well taken, and must he sustained with costs. The complainant is at liberty to amend his bill, if he sees proper, upon the usual terms, so as to adapt it to the views I have expressed and to the relief suggested.