542 So.2d 1033 (1989)
Lee JOHNSON, Individually and As Personal Representative of the Estate of Katherine G. Johnson, Deceased, Appellant/Cross-Appellee,
v.
John Charles GIRTMAN, Jr., Ralph M. Girtman, Ova J. Girtman, His Wife, James David Girtman, Georgina Girtman Taddia, Debra Girtman Schiller and Zelma E. Schmid, Appellees, and
Ralph M. Girtman and Zelma E. Schmid, Cross-Appellants.
No. 87-745.
District Court of Appeal of Florida, Third District.
April 11, 1989.
*1034 James D. Kirtley, Coral Gables, James H. Earnest, and Jeanne Heyward, Miami, for appellant/cross-appellee.
Hendricks & Hendricks and Robert A. Hendricks, Coral Gables, for appellee/cross-appellant Zelma E. Schmid.
Mac Mermell, Coral Gables, Colson, Hicks & Eidson, Cooper, Wolfe & Bolotin, Maureen E. Lefebvre and Marc Cooper, Miami, for appellees John Charles Girtman, Jr., Ova J. Girtman, James David Girtman, Georgina Girtman Taddia, Debra Girtman Schiller, and appellee/cross-appellant Ralph M. Girtman.
Before SCHWARTZ, C.J., and BARKDULL[*] and FERGUSON, JJ.
FERGUSON, Judge.
Lee Johnson, the beneficiary of an interest in real property devised to him by his wife, appeals from a final judgment enforcing an agreement entered into between his wife and members of her family, the Girtmans, which required the Girtman siblings to devise their interests in the property only to their children or to each other.
On January 1, 1946, J.D. and Kate Girtman conveyed a valuable parcel of land, located at 60 W. Flagler Street in downtown Miami, to their six children. The deed recited that it was given as consideration for, and was subject to, the terms of a contract entitled Agreement To Keep Will In Force. Under the Agreement, the Girtman children promised to devise their respective shares of the property "unto the heirs of my body if any; and if not, to my brothers and sisters... ." The Agreement also provided that "no dower right of any kind shall arise in favor of the wives of any grantee, and that the grantees have provided for their respective spouses by suitable provisions in their wills, made in lieu of such dower right or interest." The purpose of the contract was to ensure that title to the property would ultimately rest in the grandchildren of J.D. and Kate Girtman.
Katherine had not yet married Lee Johnson when she signed the Agreement To Keep Will In Force. In 1957, after Katherine and Lee married, the grantees and their spouses wrote a "letter" to J.D. Girtman promising:
We will take whatever steps necessary by deed or gift or otherwise to accomplish your desire that your grandchildren will ultimately inherit that [property]... . We make this promise in consideration of our mutual promises and acknowledge this to be the legal instrument which may be enforceable against our estate, and we ask our wives to join us in signing this letter so that it may be legally binding upon us or our heirs.
Lee Johnson signed the letter.
Katherine's original one-sixth share in the property grew over the years as a *1035 result of the deaths of two childless brothers, and at the time of her death, her interest had increased to a one-fourth share. In 1983 Katherine died childless, leaving Johnson as her surviving spouse. Her will named her husband as the sole beneficiary of her estate.
The surviving Girtman grantees and the grandchildren of J.D. and Kate Girtman commenced this action against Katherine's estate and Lee Johnson seeking specific performance of the Agreement To Keep Will In Force. After a nonjury trial, the court ruled that the Agreement To Keep Will In Force was a valid and enforceable contract to make a will and was specifically enforceable against Katherine's estate. The court also determined that by signing the 1957 letter, Johnson waived his spousal elective share in the property.
In support of his contention that he is entitled to the real estate devised to him by his wife, Johnson makes the following arguments: (1) The Agreement To Keep Will In Force is repugnant to a fee simple estate and constitutes an illegal restraint on alienation; (2) the Agreement cannot be enforced because it was abandoned or breached by the grantees; (3) the grantees are estopped by virtue of prior litigation from asserting their claims in the instant dispute; and (4) the Agreement and 1957 letter constitute an impermissible attempt to circumvent the spouse's elective share.
As to the first issue the trial court found, and we agree, that the Agreement To Keep Will In Force is a valid contract to make a will. It has long been a principle of law that a person may make a contract to bind himself to dispose of his property in a particular way by will. Roehl v. Haumesser, 114 Ind. 311, 15 N.E. 345 (1888); Brooks v. Yarbrough, 37 F.2d 527 (10th Cir.1930). Florida follows this well-recognized principle. McDowell v. Ritter, 153 Fla. 50, 13 So.2d 612 (1943) (person may validly contract to leave real or personal property by will in particular fashion); Miller v. Carr, 137 Fla. 114, 188 So. 103 (1939) (same). If the promisor breaches his agreement to make a devise or not to revoke a will, the beneficiary of the promise or the improperly revoked will may bring an action to enforce the terms of the agreement.[1]In re Estate of Algar, 383 So.2d 676 (Fla. 5th DCA), pet. for rev. denied, 389 So.2d 1107 (1980); In re Estate of Rosenstein, 326 So.2d 239 (Fla. 3d DCA 1976); Donner v. Donner, 302 So.2d 452 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 151 (Fla. 1975).
The validity of a contract to make or keep a will in force is measured by general contract law. Exchange Nat'l Bank v. Bryan, 122 Fla. 479, 165 So. 685 (1936); Martel v. Carlson, 118 So.2d 592 (Fla. 2d DCA), cert. denied, 123 So.2d 674 (Fla. 1960). Here, there is no dispute as to the clarity of the Agreement's terms. Further, the conveyance of property constitutes valid consideration. Manchester v. Loomis, 191 Iowa 554, 181 N.W. 415 (1921). The appellant argues, however, that the Agreement is void because it is a restraint on alienation and inconsistent with a fee simple estate. We disagree. Katherine Johnson, as a fee simple owner of the property, had the right to dispose of her property as she wished, including the right to contract to devise the property to her siblings. Johnson v. Hubbell, 10 N.J. Eq. 332, 66 Am.Dec. 773 (N.J.Ch. 1855) ("[t]he law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual ...").
*1036 Moreover, even if the Agreement is a restraint on alienation, it is not an unreasonable one. Florida law permits restraints on alienation that are limited, Robinson v. Randolph, 21 Fla. 630, 645 (1885); Seagate Condo. Ass'n, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976), or reasonable. Iglehart v. Phillips, 383 So.2d 610 (Fla. 1980); Blair v. Kingsley, 128 So.2d 889 (Fla. 2d DCA 1961). The purpose of the rule against restraints on alienation is to "ensure that property is reasonably available for development by prohibiting restraints that remove property from a beneficial use for an extended period of time." Iglehart, 383 So.2d at 613. The duration of the restraint is the principal concern of the rule against unreasonable restraints. Time restraints are judged by a standard of reasonableness. "The validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property. Once that effect is determined, common sense should dictate whether it is reasonable or unreasonable." Iglehart, 383 So.2d at 614. In this case, appellant makes no contention that the restraint hindered the improvement or commercial use of the property.
Furthermore, the restraint ends upon the death of the children of J.D. and Kate Girtman. Thus, the restraint is no more repugnant to the public interest than the granting of a life estate to the Girtman children with a vested remainder in fee simple to the grandchildren, or the formation of a trust for the benefit of J.D. and Kate's children and, at the children's death, a remainder in fee simple to their grandchildren. Such transactions are not considered unreasonable restraints on alienation. Further, the restraint is reasonable when judged in view of the justifiable expectations of the parties. Malouff v. Midland Fed. Sav. & Loan Ass'n, 181 Colo. 294, 509 P.2d 1240 (1973) (validity of restraint on alienation depends upon reasonable expectations of parties). See also Aquarian Found. Inc. v. Sholom House, Inc., 448 So.2d 1166 (Fla. 3d DCA 1984) (condominium unit owners entitled to rely on restrictions found in declaration of condominium). Katherine benefitted from the Agreement during her life. She received her initial interest in the property as consideration for the Agreement. When her brothers died leaving their share to their siblings, Katherine's share in the property increased. Whatever income the property generated was distributed to the grantees. Having received the benefits of the Agreement, it would be inequitable to relieve Katherine's estate from the obligations of the Agreement which protects the justifiable interests of the parties and carries out the grantors' intent.
Johnson also argues that the Agreement is unenforceable because it was breached, abandoned, or waived by the grantees. Nevertheless, the acts Johnson relies on for his argument involve conduct by the grantees only. Assuming that Johnson has correctly characterized the grantees' actions, the Agreement is still enforceable because the grantors, J.D. and Kate Girtman, fully performed their part of the Agreement. Rights arising under the Agreement cannot be defeated by the subsequent unilateral actions of the grantees. See Garwood v. American Motorists Ins. Co., 775 F.2d 228 (8th Cir.1985) (termination of lease requires mutual consent of parties); Cox v. Grose, 97 Fla. 848, 122 So. 513 (1929) (one party to a contract cannot by himself rescind it); Brewer v. Northgate of Orlando, Inc., 143 So.2d 358 (Fla. 2d DCA 1962) (same).
Johnson next contends that the parties are estopped from contesting Katherine Johnson's will because of prior litigation concerning the rights of the widows of the deceased grantees. Two of those suits resulted in settlements and the third suit enforced the Agreement. Prior litigation or settlement between other grantees, however, has no res judicata or collateral estoppel effect on the instant dispute. The settlements are irrelevant to the enforcement of the Agreement against Katherine's estate because a settlement is not evidence of liability or an admission as to any disputed matter. See Mutual Benefit Health & Acc. Ass'n v. Bunting, 133 Fla. 646, 658, 183 So. 321, 326 (1938) (rule excluding offers of compromise "is based upon the proposition that such an offer does not *1037 ordinarily proceed from and imply a belief that the adversary's claim is well-founded, but rather that the further prosecution of the claim, whether well-founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered"). Although the third suit resulted in a judgment, as Johnson admits in his brief, the litigation to which neither he nor Katherine was a party has no res judicata effect here. Furthermore, the prior litigation resulted in a finding that both the Agreement To Keep Will In Force and the subsequent Letter Agreement were valid and enforceable.
In addition to finding that the Agreement To Keep Will In Force was enforceable against Katherine's estate, the trial court ruled that Johnson was not entitled to an elective share in the property because in signing the 1957 Letter Agreement, Johnson waived any right to a statutory spouse's share. Johnson makes several arguments in support of his claim to an elective share: (1) The language of the 1957 Letter Agreement was not sufficiently clear to effect a waiver; (2) there was no consideration for a waiver; and (3) because the elective share statute was not enacted until 1975, Johnson could not, in 1957, have knowingly waived a right under the statute.
It is not necessary to decide those issues, nor reach the appellees' argument that the retroactive application of the elective share statute to the 1946 Agreement would be an unconstitutional impairment of the contract. Even if we accept Johnson's view that he did not waive his elective share and that the subsequently enacted elective share statute could be constitutionally applied in this case, Johnson's claim will still fail because the elective share statute requires that all claims and liens against the estate be deducted prior to calculating an elective share. Elective share statutes evince a clear intent to limit the elective share to the net probate estate. Kelley v. Hill, 481 So.2d 1311 (Fla. 2d DCA 1986). Section 732.206, Florida Statutes (1987), provides that the elective share "shall be computed by taking into account all property of the decedent wherever located that is subject to administration... ." Section 732.207 sets forth the method of computing the amount of the elective share:
The elective share shall consist of an amount equal to 30 percent of the fair market value, on the date of death, of all assets referred to in s. 732.206, computed after deducting from the total value of the assets:
(1) All valid claims against the estate paid or payable from the estate; and
(2) All mortgages, liens, or security interest on the assets.
(Emphasis added).
Thus, Johnson's elective share is based on the assets that remain after deducting all valid claims against the estate. Claims are defined as "liabilities of the decedent, whether arising in contract, tort, or otherwise, and funeral expenses." § 731.201(4), Fla. Stat. (1987). Here, the Agreement To Keep Will In Force gives rise to a valid claim which must be satisfied prior to determining Johnson's elective share. That contractual claim effectively eliminates from Katherine's estate any interest in the Girtman parcel. For this reason, the trial court's determination that Johnson is not entitled to an elective share in the property is correct.
Affirmed.
NOTES
[*] Judge Barkdull did not hear oral argument but participated in the decision.
[1] Although labelled an action for specific performance, the term is not technically accurate.

Of course strictly speaking equity does not decree specific performance of a contract to make a will. It will not do so in the promisor's lifetime, for he can at once undo the relief by revocation of the will. Naturally also the court cannot compel a dead man to make a will, nor can it compel the personal representative or other successors to do so for him. Nevertheless the courts frequently purport to grant specific performance of such contracts. What is meant is that they will compel the successors to transfer the property to the promisee in accordance with the deceased's agreement.
T. Atkinson, Handbook of the Law of Wills § 48 at 219 (2d ed. 1953).