DANAHY, Judge.
In this case on the one hand there is a surviving spouse who has been declared to be a pretermitted spouse entitled to an intestate share in her husband’s estate. On the other hand there are the decedent’s five children and stepson who are the residuary legatees named in the decedent’s mutual will made in agreement with the decedent’s first wife, Joann, whose death ended, that first marriage. The decedent’s second wife and surviving spouse, Rachel, is the appellant and the residuary legatees under the mutual will are the appellees.
If the appellees receive the residuary estate, Rachel will receive nothing except family allowance and any exempt property that may pass to her free from claims of creditors. The trial court entered an order granting summary judgment in favor of the appel-lees. We reverse.
On November 15, 1985, the decedent, Edgar Putnam, and his wife, Joann Putnam, executed mutual wills which each contained the following provision:
I acknowledge that this is a mutual will made at the same time as my [spouse’s] Will and each of us have executed this Will with the understanding and agreement that the survivor will not change the manner in which the residuary estate is to be distributed and that neither of us as survivors will do anything to defeat the distribution schedule set forth herein, such as disposing of assets prior to death by way of trust bank accounts, trust agreements, or in any other manner.
Each will devised that spouse’s entire estate to the survivor. Each will provided that the survivor devised his or her estate to the appellees.
After Joann Putnam’s death, Edgar Putnam married Rachel. The mutual will he had executed with his former wife, Joann, was admitted to probate upon his death. The appellees then filed claims against Edgar’s estate based on Edgar’s alleged breach of the mutual will. After objections to the claims were filed, the appellees filed independent actions based on breach of contract. These independent actions were consolidated and transferred back to the probate proceedings. Thereafter the trial court entered an order declaring Rachel to be the pretermit-ted spouse of Edgar Putnam.
On April 30, 1993, the trial court entered the summary judgment from which Rachel appeals. In that summary judgment the trial court found that Edgar Putnam breached his mutual will when he married Rachel without taking appropriate steps to protect the interests of the appellees. The trial court concluded that the appellees have valid claims against Edgar’s estate based on Edgar’s breach of the mutual wills. The trial court’s most significant holding was that the claims of the appellees were class 7 obligations under section 733.707, Florida Statutes (1991)[1], and that Rachel’s intestate share as a pretermitted spouse is subject to those class 7 obligations. The trial court then concluded that by virtue of the nature of the claims of the appellees they are entitled to Edgar’s entire estate less any exempt property, family allowance or homestead interests that may pass to Rachel free from claims of creditors.
No party has cited to us, nor have we found, any Florida case addressing the situa *983 tion presented here. However, there are two decisions of the third district court of appeal which bear on the issue of a surviving spouse’s position as opposed to the rights of persons under an antenuptial contract of the decedent. The first of these cases is In re Estate of Donner, 364 So.2d 742 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 457 (Fla.1979). In Donner, Sam Donner and his second wife, Ruth, entered into an agreement in connection with the dissolution of their marriage in 1972. That agreement provided that Sam would leave Ruth a $1,000,000 bequest in his -will and obligated him to enter into an antenuptial agreement with any future woman he might marry in which his future wife would waive her dower to the extent it might interfere with Ruth’s bequest.
Sam Donner married Larna on December 22, 1972. He executed a codicil to his will thereafter which made his wife, Lama, his sole residuary beneficiary. After Sam’s death, Larna chose not to take under the will and filed her election to take dower. The trial court ruled that Ruth was entitled to her $1,000,000 bequest out of the proceeds of the estate and, should Larna’s election to take dower diminish the assets of the estate to the extent that Ruth would not receive the full amount of her bequest, then the trial court imposed an equitable lien on Larna’s dower claim to the extent of any deficiency.
The third district court of appeal reversed. The court held that upon vesting at the death of the spouse, dower is not subject to, affected by, or altered by the acts of the husband, including, but not limited to, contracts which he may have entered into without the wife’s actual knowledge or consent. The court concluded that Lama could not be deprived of any portion of her dower as a result of the unilateral action of her husband in contracting away that right in a property settlement agreement with another.
In 1989, without citing Donner, the third district court of appeal appeared to reach a contrary result in the case of Johnson v. Girtman, 542 So.2d 1033 (Fla. 3d DCA 1989). In that case the dispute concerned a valuable property interest of a deceased wife and whether her surviving husband’s elective share could be applied to that property. The deceased wife’s siblings and their children claimed that the property was subject to an agreement among them and the decedent’s parents, J.D. and Kate Girtman, who originally conveyed the property in 1946 to their six children pursuant to an agreement in which their children promised to devise their respective shares of the property to their children and, if they had none, to their siblings. Katherine Girtman had not yet married Lee Johnson when she signed this agreement. In 1957, after Katherine and Lee married, the grantees and their spouses wrote a letter to J.D. Girtman acknowledging the agreement. Lee Johnson signed that letter.
In 1983 Katherine died childless, leaving Lee Johnson as her surviving spouse. Her will named her husband as sole beneficiary of her estate. In support of his contention that he was entitled to the Girtman real estate interest devised to him by his wife, Lee Johnson argued that the original agreement among the Girtmans and the 1957 letter constituted an impermissible attempt to circumvent the spouse’s elective share. The third district concluded that Lee Johnson’s contention failed because the elective share statute requires that all claims against the estate be deducted prior to calculating an elective share. The court found that the Girtman family agreement gave rise to a valid claim which must be satisfied prior to determining Lee Johnson’s elective share. Thus the contractual claim effectively eliminated from Katherine’s estate any interest in the Girt-man parcel and Lee Johnson was not entitled to an elective share in that property.
The appellees rely on the Johnson case in support of the trial court’s decision in their favor. While we believe there are significant differences between the facts in Johnson and the facts in the instant case, we have to agree with the appellees that the analysis of the court in Johnson and its conclusion do indeed support the appellees’ position. Nevertheless, we choose not to follow the Johnson analysis in this case.
On the same day that the third district court of appeal issued its opinion in Johnson, the highest court of Maryland issued its opinion in Shimp v. Huff, 315 Md. 624, 556 A.2d 252 (1989). The facts in that case are identi *984 cal to the facts in the case before us. As the Maryland court stated, the issue in that ease was whether Lester Shimp’s second wife, upon his death, was entitled to receive an elective share in Lester’s estate when Lester had previously contracted, by virtue of a joint will with his first wife, to will his entire estate to others. In a prior proceeding, the court had found that Lester and his first wife executed their joint will pursuant to and in accordance with a valid and binding contract. Thereafter, Lester did not execute another will or otherwise disturb the testamentary plan set forth in the joint will.
Lester’s first wife, Clara, died in 1975. On April 4,1985, Lester married Lisa Mae; they remained married until his death on January 11, 1987. Lester was not survived by any children. Following Lester’s death, the joint will of Clara and Lester was admitted to probate. Lisa Mae filed an election for a statutory share of Lester’s estate. Thereafter she filed suit for a declaratory judgment requesting that the court enter an order that she was entitled to an elective share of Lester’s estate. She was opposed in that proceeding by the personal representatives of Lester’s estate. The trial court found that because Lester, before his marriage to Lisa Mae, had entered into a binding contract to devise all of his estate to others, he was not seized of an estate of inheritance at the time of his second marriage, but rather was merely a trustee of that estate. Because a widow is entitled to no part of her husband’s estate except that of which he dies seized or possessed, the trial court concluded that since Lester was merely a trustee for the property, there was no estate from which Lisa Mae could take an elective share.
The Maryland court reversed the trial court’s determination. It said that while it had not previously addressed the issue of a surviving spouse’s right to take an elective share in conflict with claims under a contract to convey by will, courts in other jurisdictions have examined the issue under varying factual situations. Among the many cases then cited, the court cited In re Estate of Donner. The court pointed out that various rationales and various conclusions are reflected in the cases from other jurisdictions. It recognized that if legatees under a prior mutual will were given the status of claimants against the estate, their claims would prevail over the surviving spouse’s elective share. But the court rejected that analysis. It found the question of priorities between a surviving spouse and beneficiaries under a contract to make a will should be resolved based on the public policy which surrounds the marriage relationship and which underlies the elective share statute. After reviewing Maryland decisions and Maryland statutory law, the court said that those statutes and principles of law suggest that there is a strong public policy in favor of protecting the surviving spouse’s right to receive an elective share. The court concluded that the beneficiaries’ rights under the contract between Lester and Clara were limited by the possibility that the survivor might remarry and that the subsequent spouse might elect against the will. Consequently, the court concluded that their claims under the contract were subordinate to Lisa Mae’s superior right to receive her elective share.
We reach the same conclusion in this case, based on the same reasoning. We believe that the statutes of Florida pertaining to a surviving spouse’s elective share or preter-mitted share and cases discussing those rights and their predecessor, dower, suggest a strong public policy in favor of protecting a surviving spouse’s right to receive an elective share or a pretermitted share. See In re Suarez’s Estate, 145 Fla. 183, 198 So. 829 (1940); Donner. We believe this strong public policy requires that the surviving spouse’s elective share or pretermitted share be given priority over rights arising under an ante-nuptial contract of the deceased spouse.
For the foregoing reasons, we reverse with directions that summary judgment be entered in favor of the appellant reflecting her entitlement to an intestate share as preter-mitted spouse. We recognize that our holding here conflicts with the rule applied in Johnson v. Girtman.
Reversed and remanded with directions.
RYDER, A.C.J., and ALTENBERND, J., concur.

. Under the current statute the class is numbered Class 8. § 733.707, Fla.Stat. (1993).