656 So.2d 460 (1995)
Mary Ann VIA, etc., et al., Petitioners,
v.
Mary Rachel PUTNAM, Respondent.
No. 83660.
Supreme Court of Florida.
June 8, 1995.
*461 Michael R. Riemenschneider and Maureen M. Matheson of Reinman, Harrell, Graham, Mitchell & Wattwood, P.A., Melbourne, Joseph W. Fleece, III of Holland & Knight, St. Petersburg, and James H. Richey, Melbourne, for petitioners.
Teresa Cooper Ward, St. Petersburg, for respondent.
OVERTON, Justice.
We have for review Putnam v. Via, 638 So.2d 981 (Fla. 2d DCA 1994). This case involves a dispute between a decedent's surviving spouse, who claimed a share of the decedent's estate under the pretermitted spouse statute,[1] and the children of the decedent's first marriage, who claimed that the mutual wills executed by their parents, naming them residuary beneficiaries of their parents' estates, gave rise to a creditor's contract claim that had priority against the surviving spouse's claim against the estate. The Second District Court of Appeal held that the surviving spouse's right to receive either an elective share or pretermitted spouse's share of the decedent's estate has priority over the claims of the decedent's children. The district court acknowledged conflict with Johnson v. Girtman, 542 So.2d 1033 (Fla. 3d DCA 1989). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
For the reasons expressed in this opinion, we approve the decision of the district court and find that Florida has a strong public policy concerning the protection of the surviving spouse of the marriage in existence at the time of the decedent's death. This policy has been continuously expressed in the law of this state and is controlling. We agree with the district court's reasoning and conclude that the children, as third-party beneficiaries under the mutual wills of their parents, should not be given creditor status under section 733.707, Florida Statutes (1993), when their interests contravene the interests of the surviving spouse under the pretermitted spouse statute.
The record reveals the following facts. On November 15, 1985, Edgar and Joann Putnam executed mutual wills, each of which contained the following provision:
I acknowledge that this is a mutual will made at the same time as my [spouse's] Will and each of us have executed this Will with the understanding and agreement that the survivor will not change the manner in which the residuary estate is to be distributed and that neither of us as survivors will do anything to defeat the distribution schedule set forth herein, such as disposing of assets prior to death by way of trust bank accounts, trust agreements, or in any other manner.
Each will devised that spouse's entire estate to the survivor and provided that the residuary estate would go to the children upon the survivor's death.[2] Joann Putnam died without having done anything to defeat the terms of her mutual will. Edgar Putnam later remarried and failed to execute a subsequent will to provide for his second wife, Mary Rachel Putnam (Rachel Putnam).
Upon Edgar Putnam's death, his mutual will was admitted to probate. Rachel Putnam filed both a Petition to Determine Share of Pretermitted Spouse and an Election to Take Elective Share. In response, the children filed claims against the estate alleging that, by marrying Rachel Putnam, Edgar had breached his contract not to defeat the distribution schedule set forth in his mutual will by subjecting his assets to the statutes governing homestead property, exempt property, pretermitted share, and family allowance. Rachel Putnam filed objections to the claims of the children. The children also brought independent actions in the circuit court based on breach of contract. These actions were consolidated. The trial judge, during the course of these proceedings, made the following findings. First, he found that: (a) the mutual will provision previously quoted "constituted a binding contractual agreement," of which the children are third-party beneficiaries; (b) the children properly filed a claim against the estate based upon the decedent's breach of the mutual will; and (c) *462 the surviving spouse, Rachel Putnam, is the pretermitted spouse of Edgar Putnam. Second, the trial judge entered a summary judgment expressly finding that "Edgar J. Putnam breached his joint and mutual will that he made with Joann Putnam when he married Rachel Putnam without taking appropriate steps to protect the interests of the third-party beneficiaries under said will" and that the claims of the children "are class 7 obligations pursuant to § 733.707, Florida Probate Code."[3] The trial judge concluded that "any pretermitted spouse share or elective share that Rachel Putnam may have is subject to the class 7 obligations of this estate."
On appeal, the district court reversed and noted that, if the children's residuary beneficiary status in the mutual wills allowed them to assert creditor status against the estate, the surviving spouse in this instance would "receive nothing except family allowance and any exempt property that may pass to her free from claims of creditors." Putnam, 638 So.2d at 982. The district court's decision relied on the reasoning in Shimp v. Huff, 315 Md. 624, 556 A.2d 252, 263 (1989), in which Maryland's highest court, on facts essentially identical to the facts in this case, found that the public policy surrounding the marriage relationship and the elective share statute required it to rule in favor of protecting the surviving spouse's right to receive an elective share. Likewise, the Second District Court of Appeal stated that "the statutes of Florida pertaining to a surviving spouse's elective share or pretermitted share in cases discussing those rights and their predecessor, dower, suggest a strong public policy in favor of protecting a surviving spouse's right to receive an elective share or a pretermitted share." Putnam, 638 So.2d at 984. The district court recognized that its holding conflicts with the Third District Court's decision in Johnson v. Girtman, 542 So.2d 1033 (Fla. 3d DCA 1989).
Before directly addressing the issue in this case, it is important to review the history of the elective share and pretermitted spouse statutes in Florida.

History of a Surviving Spouse's Rights to a Deceased Spouse's Estate
The current statutory provisions regarding the elective share were born out of the widow's right to dower at common law. At common law, the widow's right to dower consisted of "a life estate, for the term of her natural life, in one-third of all the lands and tenements of which her husband was seized in fee simple or fee tail during the coverture and of which any issue which she might have had might have been an heir." 1 D.H. Redfearn, Wills and Administration in Florida, § 19-1 (Leslie A. Jefferies, ed., 6th ed. 1986). The purpose of dower was to ensure the protection and support of the decedent's widow and the nurture and education of their children. See 28 C.J.S. Dower § 6b (1941). However, this right rose no higher than the husband's interest in the land; that is, the widow's right to dower attached only to real estate in which the husband had seisin or possession of legal title. Id. § 6b. The prerequisite of seisin was first incorporated into the law of Florida in 1828, and this widow's right of common law dower continued in Florida until the Probate Act of 1933 was enacted by the Florida Legislature. After 1933, section 731.34 of the Probate Code expanded the common law right to dower by stating that a widow's right to dower attached to all property the husband "owned," by holding legal or equitable title, at the time of his death.
The pretermitted spouse statute also had its origins in the common law principles regarding the legal effect of a marriage following the execution of a will. At common law, a man's will was automatically revoked following his marriage and the birth of issue unless provision was made in the will in contemplation of such events. Redfearn, supra, at § 8-10; see Belton v. Summer, 31 Fla. 139, 12 So. 371 (1893). Florida followed this common law rule until the enactment of the Probate Act of 1933. That Act provided, in section 731.10, as follows:
When a person marries after making a will and the spouse survives the testator, such surviving spouse shall receive a share in the estate of the testator equal in value *463 to that which such surviving spouse would have received if the testator had died intestate, unless provision has been made for such spouse by marriage contract or unless such spouse discloses an intention not to make such provision. The share of the estate which is assigned to such pretermitted spouse shall be raised in accordance with the order of appropriation of assets set forth in this law.
Ch. 16013, § 11, Laws of Fla. (1933).
Our present constitution was adopted in 1968. It contains an equal protection clause that applies to "all natural persons." Art. I, § 2, Fla. Const. (1968). The 1885 constitutional provision applied only to "all men." Declaration of Rights, § 1, Fla. Const. (1885). In the early 1970's, gender-based classifications were challenged in this Court under both the state and federal equal protection guarantees. For example, in 1971, this Court held that a wife had an equal right to sue for loss of consortium, a right that was previously limited to the husband. See Gates v. Foley, 247 So.2d 40 (Fla. 1971). In 1973, the legislature, following this philosophy of eliminating gender distinctions in the law, expanded the dower provisions to include a husband's right to curtesy. Ch. 73-707, § 1, at 166, Laws of Fla. (amending § 731.34, Fla. Stat. (1971)). In 1974, the legislature abolished both dower and curtesy as rights in the property of a decedent, created an elective share provision in their stead, and amended the pretermitted spouse statute. The newly created elective share provision read as follows:
If a married person domiciled in this state dies, the surviving spouse has a right to elect to take a share of one third (1/3) of the net distributable estate. The net distributable estate shall consist of the assets of the estate after payment of taxes, claims, family allowance, exempt property, and expenses of administration. A surviving spouse is entitled to homestead, exempt property and family allowance whether or not he elects an elective share. Nothing in this section shall require the spouse to contribute to estate or inheritance taxes if contribution would not be required by § 733.817.
Ch. 74-106, § 1, at 220-21, Laws of Fla. (creating § 732.201, Fla. Stat. (Supp. 1974)). The legislative staff summary regarding this enactment reads as follows:
The term and concept of elective share will replace dower. Last year the legislature extended the concept of dower to include the husband and this is retained in the elective share.
If the surviving spouse is dissatisfied with the share under the will, the spouse may take 1/3 of the net estate. This is a change since under present law the 1/3 is free and clear of creditors. Thus many estates are reduced as far as the residuary estate and the children are concerned. The spouse would take 1/3 off the top and the others would have to bare [sic] the creditor's claim etc. Under the elective share, claims, creditors, expenses of administration and taxes are paid before the 1/3 is computed.
Judiciary Comm., HB 4050 (1974) Staff Summary (emphasis added).
It is clear that the above-cited provision was intended to replace dower for the wife and curtesy for the husband and provide an express elective share for either spouse. In addition, the staff analysis reveals that the legislature was concerned with the effect of creditors' claims on the decedent's residuary estate, which is often devised to the children. Under the prior statute, the residuary estate bore the full responsibility for all costs and expenses of the estate. When the legislature amended the statute, it provided that the spouse's elective share, which previously was exempt from the costs and expenses of the estate, would be calculated on the net estate and, thus, would bear a proportional share of the costs and expenses. In effect, the 1974 statute reduced the amount of the spouse's elective share, increased the amount of the residuary estate, and treated them both the same with regard to costs and expenses. A year later, in 1975, the legislature again amended the law to provide the surviving spouse an elective share equal to 30% of the fair market value of the decedent's property at death, "computed after deducting from the total value of the assets all valid claims against the estate paid or payable from the *464 estate." Ch. 75-220, § 15 at 512, Laws of Fla. This amendment had the effect of increasing the residuary estate because it reduced the elective share from 33 1/3% to 30%. The statute now in effect reads as follows:
The elective share shall consist of an amount equal to 30 percent of the fair market value, on the date of death, of all assets referred to in s. 732.206, computed after deducting from the total value of the assets:
(1) All valid claims against the estate paid or payable from the estate; and
(2) All mortgages, liens, or security interests on the assets.
§ 732.207, Fla. Stat. (1993).
As previously noted, the pretermitted spouse statute, which modified the common law rule, was also enacted in 1933. The present statute, which is virtually identical to the statute enacted in 1933, reads as follows:
When a person marries after making a will and the spouse survives the testator, the surviving spouse shall receive a share in the estate of the testator equal in value to that which the surviving spouse would have received if the testator had died intestate, unless:
(1) Provision has been made for, or waived by, the spouse by prenuptial or postnuptial agreement;
(2) The spouse is provided for in the will; or
(3) The will discloses an intention not to make provision for the spouse.
The share of the estate that is assigned to the pretermitted spouse shall be obtained in accordance with s. 733.805.
§ 732.301, Fla. Stat. (1993).
The foregoing history indicates that Florida, by application of the common law and by statutory scheme, has always maintained a strong public policy in favor of protecting a surviving spouse of a marriage in existence at the time of a decedent's death.

The Instant Case
The children argue that they are third-party beneficiaries of the contract between the decedent and their mother and that they deserve creditor status under section 733.707. As creditors, they would have priority over the share of the pretermitted spouse and would receive the entire estate. Under this scheme, the second wife would receive only a family allowance, the exempt property, and a life estate in the homestead. We have previously determined that a third-party beneficiary of a mutual will does not have priority over the statutory rights of a surviving spouse. In Tod v. Fuller, 78 So.2d 713, 714 (Fla. 1955), we affirmed a trial court order giving a widow's statutory right to dower priority over the claim of a third-party beneficiary under mutual wills executed by a decedent and his former spouse. This Court predicated its decision on the fact that the dower statute gave a husband freedom in the testamentary disposition of his property so long as his wife's dower rights were protected and because the second wife had no notice of the prior mutual wills executed by the husband and his first wife. Id.
The petitioners assert that Tod no longer applies because it dealt with the now-abolished dower statute which entitled the surviving spouse to a share in the decedent's property free from liability for all debts of the decedent and all costs, charges, and expenses of administration under the provisions of section 731.34, Florida Statutes (1955). While it is clear that the legislature intended for the residuary beneficiaries and the surviving spouse to share the burden of the expenses of the estate after the 1974 amendment of the elective share statute, it is our view that the legislature did not intend for this modification to allow creditors' claims by third-party beneficiaries of previously executed mutual wills to take priority over the statutory rights of a pretermitted spouse and deny the pretermitted spouse any share in the decedent's estate.
We acknowledge that other jurisdictions and the Third District Court of Appeal in Johnson take the view that a surviving spouse's statutory share of an estate can be subordinated to claims of third-party beneficiaries of previously executed mutual wills. See Johnson; see also Gregory v. Estate of Gregory, 315 Ark. 187, 866 S.W.2d 379 (1993); In re Estate of Stewart, 69 Cal.2d 296, 70 Cal. Rptr. 545, 444 P.2d 337 (1968); *465 Keats v. Cates, 100 Ill. App.2d 177, 241 N.E.2d 645 (1968); Baker v. Syfritt, 147 Iowa 49, 125 N.W. 998 (1910); Lewis v. Lewis, 104 Kan. 269, 178 P. 421 (1919); Rubenstein v. Mueller, 19 N.Y.2d 228, 278 N.Y.S.2d 845, 225 N.E.2d 540 (1967); Robison v. Graham, 799 P.2d 610 (Okla. 1990). These courts have advanced four different rationales for giving priority to the contract beneficiaries: (1) The surviving spouse's marital rights attach only to property legally and equitably owned by the deceased spouse, and the will contract entered into before the marriage deprives the deceased spouse of equitable title and places it in the contract beneficiary. Lewis. (2) When the surviving testator accepts benefits under the contractual will, an equitable trust is impressed upon the property in favor of the contract beneficiaries, and the testator is entitled to only a life estate in the property with the remainder going to the beneficiaries upon the testator's death. Rubenstein; Gregory; Keats; Baker; Robison. (3) When the surviving testator accepts benefits under the contractual will, the testator becomes estopped from making a different disposition of the property, despite any subsequent marriage. Stewart. (4) Finally, as expressed in Johnson, when the surviving testator breaches the will contract, the contract beneficiaries are entitled to judgment creditor status, thus giving them priority over the rights of the surviving spouse under the applicable state probate code. It is this last theory that the trial judge adopted in ruling for the children in the instant case. Under these four theories, it makes no difference whether the surviving spouse was married to the decedent for one year or twenty-five years; the surviving spouse would be entitled to no interest in the deceased spouse's probatable estate if the third-party beneficiaries' claim consumed the estate.
The Court of Appeals of Maryland, that state's highest court, recently made a detailed analysis of this issue in an opinion by Chief Judge Murphy. See Shimp v. Huff, 315 Md. 624, 556 A.2d 252 (1989). That court, after reviewing the theories identified above, found that
the question of priorities between a surviving spouse and beneficiaries under a contract to make a will should be resolved based upon the public policy which surrounds the marriage relationship and which underlies the elective share statute... .

In addition to the public policy underlying these statutes, the public policy surrounding the marriage relationship also suggests that the surviving spouse's claim to an elective share should be afforded priority over the claims of beneficiaries of a contract to make a will. Like the majority of other courts, we have recognized the well settled principle that contracts which discourage or restrain the right to marry are void as against public policy.
Id. 556 A.2d at 263 (citations omitted) (emphasis added). Similar views have been expressed by other courts. See e.g., Patecky v. Friend, 220 Or. 612, 350 P.2d 170 (1960); In re Arland's Estate, 131 Wash. 297, 230 P. 157 (1924). The Shimp court concluded that the contract that gave rise to the claim of the third-party beneficiaries included an implied limitation. It stated: "[W]e find that the respondent's rights under the contract were limited by the possibility that the survivor might remarry and that the subsequent spouse might elect against the will." Shimp, 556 A.2d at 263.
The district court of appeal in the instant case found the reasoning and analysis in Shimp to be persuasive. We agree and find that it is also consistent with our prior decision in Tod and Justice Boyd's statement in In re Estate of Yohn, 238 So.2d 290, 296 (Fla. 1970) (Boyd, J., specially concurring), that "[t]he institution of marriage has been a cornerstone of western civilization for thousands of years and is the most important type of contract ever formed." We emphasize that the justification for the elective share and pretermitted spouse statutes is to protect the surviving spouse of the marriage in existence at the time of death of his or her spouse. The legislature has made these shares of a deceased spouse's estate a part of the marriage contract.
Florida's pretermitted spouse statute applies only "[w]hen a person marries after making a will and the spouse survives the testator." § 732.301, Fla. Stat. (1993) (emphasis *466 added). The statute sets forth three specific circumstances when a pretermitted spouse would not be entitled to a share of the decedent's estate: (1) when "[p]rovision has been made for, or waived by, the spouse by prenuptial or postnuptial agreement;" (2) when "[t]he spouse is provided for in the will"; or (3) when "[t]he will discloses an intention not to make provision for the spouse." Id. The trial judge found that none of these exceptions applied and that the surviving spouse in this case was a pretermitted spouse under the statute. To hold as suggested by the children would essentially amend the statutory exceptions to the pretermitted spouse statute and add a fourth exception. The legislature enacted these exceptions based on the public policy of protecting the surviving spouse of the marriage contract in existence at the time of the decedent's death. The legislature has clearly taken into account when this provision should apply and when it should not apply. The protection of the widow's interest in the estate of her husband has been in existence in Florida longer than we have been a state. We conclude that we have no authority to judicially modify the public policy protecting a surviving spouse's interest in the deceased spouse's estate by adopting this creditor-theory approach as an exception to the pretermitted spouse statute.
Accordingly, we approve the decision of the district court of appeal in this case and disapprove the decision of the Third District Court of Appeal in Johnson to the extent that it conflicts with this opinion.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] § 732.301, Fla. Stat. (1993).
[2] The Petitioners in this case are the decedent's five children and his stepson.
[3] This class is denominated class 8 in the current statute. § 733.707, Fla. Stat. (1993).