T.C. Memo. 1997-470


UNITED STATES TAX COURT


ROSALYN DEUTSCH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21845-93.                    Filed October 15, 1997.


     Decedent (D), who died in 1988, bequeathed his
spouse (P) minimal assets from a net estate of
$3,361,683.  In 1989, P elected against D's will to
take the Florida elective share of 30 percent of the
net estate, or $1,008,504.  The estate reported 1989
distributable net income (DNI) of $707,095, including
$176,432 of capital gains that D's personal
representative treated as estate income, and $377,753
of distributions to the estate from D's individual
retirement accounts.  Pursuant to order of the Florida
Probate Court, D's personal representative paid P the
elective share in 1989, but made no distributions to
the residuary beneficiaries until 1990.  The personal
representative claimed a distribution deduction of
$707,095 for 1989 under sec. 661(a), I.R.C., on the
ground that all the estate's DNI had been included in
the payments to P in satisfaction of her elective
share.  P did not include in her gross income any part
of the elective share.

Held: Payments to P in satisfaction of her Florida elective share are not distributions of income or amounts properly paid or credited or required to be distributed to beneficiaries within the meaning of secs. 661(a), 662(a), I.R.C., and sec. 1.661(a)-2(e), Income Tax Regs. P's Florida elective share is excluded from her gross income.

Kenneth M. Hart and Stephen G. Vogelsang, for petitioner.

Sergio Garcia-Pages and Kenneth A. Hochman, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, Judge:  Respondent determined a deficiency of $201,825 in petitioner's 1989 income tax.[1]  The issue for decision is whether distributable net income (DNI) of the estate of petitioner's deceased husband is included in her gross income by reason of the payment to her during 1989 of her elective share of the estate under Florida law.  We hold that petitioner is not required to include any part of the payment of her elective share in gross income.

---

[1] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in Lake Worth, Florida, when she filed the petition. Petitioner and Seymour Deutsch (decedent) had been married for approximately 9 years when he died on September 22, 1988, at age 67. Decedent was survived by three children from his first marriage, Jay R. Deutsch (Mr. Deutsch) and his two sisters. Decedent's sister and her children, among them Richard L. Braunstein (Mr. Braunstein), also survived decedent.

Decedent died testate, leaving a net estate of $3,361,683. Decedent left petitioner substantially less than the statutory 30-percent elective share of $1,008,504 that she was entitled to under Fla. Stat. Ann. sec. 732.201 (West 1995). Under the will, petitioner would have taken no more than decedent's interests in two country clubs (the Woodcrest and Fountain bonds), and furnishings and other tangible personal property located at his residence, a Lake Worth, Florida, condominium. The will also purported to devise[2] to petitioner the condominium, which

---

[2] Terminology in this area has become quite confusing. In a distinction dating from the 19th century, a testator devises real property to a devisee and bequeaths personal property to a legatee. Dukeminier, Wills, Trusts, and Estates 36 (1984). In recent years, the terms have become synonymous in some jurisdictions. The Florida Probate Code, for example, uses

(continued...)

actually passed to her outside the probate estate as surviving tenant by the entirety. The will devised the residuary estate in equal shares to Mr. Deutsch and his sisters.

Decedent's will designated Mr. Deutsch, a certified public accountant, and Mr. Braunstein, an attorney, as executors, or personal representatives, of his estate.[3] In January 1989, Mr. Braunstein informed petitioner that he believed decedent had intended to increase the amounts left to her under his will. Mr. Braunstein also informed petitioner that, regardless of the provisions of the will, she was entitled to elect to take the Florida elective share. He further told her that he would apprise decedent's children of his understanding of decedent's intention to change his will. Shortly thereafter, Mr. Braunstein disclaimed his bequest under the will.

On February 14, 1989, petitioner filed an "Election to Take Elective Share" with the probate division of the Circuit Court for the 15th Judicial Circuit for Palm Beach County, Florida (Probate Court). Petitioner's election resulted in more than 2

---

[2](...continued)
"devise" to describe the transfer at death of personal property as well as real property. Fla. Stat. Ann. sec. 731.201(8) (West 1995).

[3] The terms "executor" and "personal representative" are synonymous. Fla. Stat. Ann. sec. 731.201(25) (West 1995) defines "personal representative" as a court appointed fiduciary who administers a decedent's estate. For purposes of the Florida Probate Code, the definition supersedes "executor" and other synonymous terms. Id.

years of acrimonious litigation between her and Mr. Deutsch in 2 divisions of the Palm Beach County Circuit Court over the amount of petitioner's elective share, the timing of its payments, and, ultimately, whether such payment would cause petitioner to suffer the entire Federal income tax impact of the estate's 1989 DNI.

On May 26, 1989, the personal representatives filed a "Petition for Determination of Elective Share" with the Probate Court. The personal representatives asked the Probate Court to defer payment of petitioner's elective share, pursuant to Fla. Stat. Ann. sec. 732.214 (West 1995), until after they had filed the estate tax return, which was due upon the expiration of an extension on December 22, 1989. Petitioner's answer of June 16, 1989, requested the Probate Court to compel immediate payment.

Several concerns, some based on incomplete and erroneous information, impelled petitioner and her attorneys to request prompt payment of her elective share. Petitioner's attorneys correctly advised her that the elective share was not entitled to participate in income of the estate and that, until the Probate Court ordered payment of the elective share, she would not be entitled to receive interest on the fund. But petitioner's attorneys mistakenly believed that the estate was already liquid at the time of petitioner's election, and thus could easily pay the elective share without delay.

Until September 15, 1989, consistent with their mistaken belief in the estate's liquidity, petitioner and her attorneys also mistakenly believed that the estate's 1989 DNI would not exceed $100,000. Notwithstanding that the Florida elective share is not entitled to participate in estate income, petitioner's attorneys believed that petitioner's elective share would attract the estate's DNI in the year of payment. As early as summer 1989, petitioner's attorneys were trying to minimize the impact of the estate's DNI on petitioner's income tax liability, well before they learned in late September how much DNI there would be. In a July 6, 1989, letter to Mr. Deutsch's attorneys, petitioner's attorneys asked the estate to make an immediate distribution to the residuary beneficiaries, which would have required them to include their proportionate shares of DNI in their taxable income. In subsequent telephone conversations with Mr. Deutsch's attorneys at the end of August, petitioner's attorneys again asked the estate to make concurrent distributions to the residuary beneficiaries. When Mr. Deutsch refused to do so, petitioner's attorneys asked him to postpone payment of the elective share until a later year.

On September 6, 1989, petitioner filed with the Probate Court a Motion for Appointment of Administrator Ad Litem, alleging that Mr. Deutsch's dual role as estate fiduciary and beneficiary created a conflict of interest. On September 15,

1989, petitioner and her attorneys were informed by one of Mr. Deutsch's attorneys that the estate income for 1989 would exceed $250,000. At a hearing on the motion before the Probate Court on September 25, 1989, the parties discussed amounts and components of estimated estate income. Based upon Mr. Deutsch's work papers, which were presented to the Probate Court in support of the estate's plan to satisfy petitioner's elective share, the parties stipulated that estate income was projected to be $650,000 in 1989 and $50,000 in 1990. Petitioner asked the Probate Court to synchronize payment of the elective share with distributions to the residuary beneficiaries.

The parties entered into a settlement, stipulating the projected 1989 income, the size of the net estate, $3,361,683, and the elective share, $1,008,504, and the assets to be used to satisfy the elective share. The Probate Court ratified this settlement in an Agreed Order, dated September 25, 1989, the day of the hearing. The Order also provided for the transfer to petitioner, as part of the elective share, of the specific assets that would have passed to her under the will, with the balance to be paid in cash.

The Probate Court's order directed the personal representatives to pay petitioner the elective share in its entirety in 1989, and not to make any distributions to the residuary beneficiaries until 1990 or thereafter. In the same

Order, the Probate Court denied petitioner's motion for appointment of an administrator ad litem.  On October 30, 1989, in response to petitioner's motion for rehearing, the Probate Court amended its order to permit but not require the personal representatives to make distributions to the residuary beneficiaries during 1989.  Petitioner promptly appealed the modified order.  In January 1990, the Florida Fourth District Court of Appeals dismissed the appeal.  On November 3, 1989, during pendency of the appeal, Mr. Deutsch tendered, and petitioner accepted payment of the elective share, less amounts left in escrow to pay various State tax liabilities.  The estate paid petitioner the amount that had been fixed by the Agreed Order of September 25, 1989.  It did not include interest from the date of the Agreed Order to the date of payment.

In the 1989 calendar year fiduciary income tax return for decedent's estate, filed August 15, 1990, pursuant to extensions, Mr. Deutsch reported DNI of $707,095, net of tax-exempt interest, and claimed a distribution deduction for that amount pursuant to section 661(a) for the payment to petitioner in satisfaction of her elective share.  Mr. Braunstein did not sign the estate's fiduciary income tax return.

The $707,095 of 1989 DNI reported by the estate was divided into three major categories:  Dividend and interest income of $152,910, some of which the estate received after petitioner

received her elective share on November 3, 1989; $377,753 of income from 2 individual retirement accounts (IRA's), including post mortem interest and other income paid to the estate in 1989; and capital gains of $176,432 that, pursuant to advice from the attorney who drafted decedent's will, Mr. Deutsch treated as estate income in their entirety. The capital gains consisted entirely of post mortem asset appreciation that the estate realized when Mr. Deutsch liquidated estate assets in anticipation of paying the elective share to petitioner.

On September 13, 1990, petitioner filed her 1989 income tax return, pursuant to extensions. Petitioner's return did not include the DNI shown by the estate's fiduciary income tax return as having been distributed to her. Petitioner's return included a Form 8275 (Disclosure Statement under Section 6661) with a rider that disclosed receipt of the elective share and its noninclusion in her gross income and also disagreed with inclusion of the capital gains in estate DNI.

Following dismissal, in March 1990, of her appeal of the Probate Court Order, petitioner sued Mr. Deutsch in the Civil Division of the Circuit Court for the 15th Judicial Circuit for Palm Beach County, Florida. Petitioner alleged that Mr. Deutsch had violated his fiduciary duty to her by "intentionally plac[ing] 100% of the income tax burden on [petitioner] and

diverted from himself and his relatives their share of the income tax burden". The complaint did not name Mr. Braunstein.

On January 31, 1991, petitioner proposed settling her suit against Mr. Deutsch. She asked the estate to place $124,000 in escrow until expiration of the 3-year period of limitations on petitioner's 1989 Federal income tax return, to be paid only if respondent determined an income tax deficiency against petitioner by reason of her receipt of the elective share. In the same letter, petitioner asserted that "no case law, statutory law or IRS ruling * * * holds that the Florida elective share carries out distributable net income". Mr. Deutsch responded that he did not wish to play "audit roulette", and counter-offered to pay petitioner $50,000 to settle all her claims and serve as a "war-chest" for any controversy with respondent. In April 1991, petitioner accepted that offer and settled her suit against Mr. Deutsch for a payment of $50,000.

On August 13, 1993, prior to the August 15, 1993, expiration of the period of limitations on assessment of a 1989 income tax deficiency against the estate, respondent determined that petitioner had received a distribution of income of $707,095 from the estate during 1989 and sent her a notice of a deficiency of $201,825 in her income tax for that year. Petitioner filed a timely petition with this Court.

The personal representatives had made distributions from the estate to the residuary beneficiaries in 1990 and 1991. As of the time of trial, the personal representatives had not made final distributions from the estate.

OPINION

The question for decision is whether payments in satisfaction of a surviving spouse's elective share under Florida law (the Florida elective share) are distributions of income or other amounts properly paid or credited or required to be distributed, secs. 661(a), 662(a); sec. 1.661(a)-2(e), Income Tax Regs., that carry out the estate's DNI to the recipient.[4]

We begin our inquiry by summarizing the issues that bear on the question, as framed and argued by petitioner and respondent. Petitioner argues, citing and quoting Ferguson, Freeland, & Ascher, Federal Income Taxation of Estates, Trusts, and Beneficiaries, sec. 1.3 at 1:17 (2d ed. 1993 & Supp. 1997) (Ferguson et al.), that the Florida elective share is not "subchapter J property"; in petitioner's view, the Florida

---

[4] By not issuing a timely protective notice of deficiency to the estate, respondent lost the opportunity for a comprehensive resolution of the issues in this case in a consolidated proceeding that would have avoided any potential whipsaw. But see the provisions for statutory mitigation, secs. 1311-1314, particularly, sec. 1312(5); see also sec. 1.1312-5(a)(3), Income Tax Regs., and transferee liability, sec. 6901(h). As to petitioner's status as a nontransferee, see John Ownbey Co. v. Commissioner, 645 F.2d 540, 546 (6th Cir. 1981), revg. T.C. Memo. 1978-482; Stokes v. Commissioner, 22 T.C. 415, 427 (1954).

elective share passes from a decedent to a surviving spouse outside "the subchapter J estate," so that "the distribution rules of subchapter J simply do not apply".[5]  See also Zaritsky & Lane, Federal Income Taxation of Estates and Trusts, sec. 1.06 at 1-12 (2d ed. 1993 & Supp. 1996).  Petitioner also relies on Rev. Rul. 64-101, 1964-1 C.B. (Part 1) 77, modified by Rev. Rul. 71-167, 1971-1 C.B. 163, in which the Commissioner ruled that payment of the statutory predecessor of the elective share, Florida statutory dower, did not carry out the estate's DNI to the surviving spouse.[6]

Respondent argues that petitioner is an estate beneficiary whose elective share interest is qualitatively indistinguishable from the interests of the estate's residuary beneficiaries.  In response to petitioner's argument that any differences between the Florida elective share and statutory dower amount to "a

---

[5] The terms "subchapter J estate" and "subchapter J property" were introduced in Ferguson, Freeland, & Stephens, Federal Income Taxation of Estates and Beneficiaries, 13-14 (1970), to describe property of decedent that, for whatever reason, becomes subject to the subchapter J distribution rules. See also Ferguson, Freeland, & Ascher, Federal Income Taxation of Estates, Trusts, and Beneficiaries, sec. 1.31, at 1:19 (2d ed. 1993 & Supp. 1997) (Ferguson et al.).

[6] Petitioner raised alternative arguments if we were to hold that petitioner's elective share is subchapter J property:  (1) Petitioner was a creditor of the estate and not a sec. 643(c) beneficiary; (2) payment in satisfaction of the Florida elective share qualified as a specific bequest under sec. 663(a)(1); and (3) capital gains were not properly includable in estate DNI. Because we decide the main issue as we do, we need not address petitioner's alternative arguments.

distinction without a difference", respondent argues that any comparison between them is "inapposite".

Inasmuch as State law is the source of legal rights and interests in property and income, we first ascertain the legal and economic characteristics of the Florida elective share under the Florida Probate Code as compared with Florida statutory dower. In so doing, we are bound and guided by the relevant rulings of the Florida Supreme Court, Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967), and give "proper regard" to rulings of the lower Florida courts, id. We then determine the effect of those legal rights and interests for Federal income tax purposes in accordance with Federal income tax principles and rules. Morgan v. Commissioner, 309 U.S. 78, 81 (1940); Lyeth v. Hoey, 305 U.S. 188, 193-194 (1938); Jones v. Whittington, 194 F.2d 812, 815 (10th Cir. 1952).

We agree with petitioner and conclude that the distribution rules of subchapter J do not apply to her Florida elective share. The legal and economic differences between petitioner's interest in the Florida elective share and the interests of the residuary beneficiaries are so significant that their respective interests must be treated differently for Federal income tax purposes. The Florida elective share, which replaced statutory dower in 1975, should be accorded the same Federal income tax treatment as statutory dower because they have common legal and economic

characteristics that justify their exclusion from the subchapter J estate. The exclusion of the Florida elective share from the subchapter J distribution rules is confirmed by its lack of any legal or economic participation in estate income, which, under Florida law, accrues in this case for the ultimate benefit of the estate's residuary beneficiaries.

1.  Comparison of Elective Share with Statutory Dower

Florida statutory dower,[7] from 1933 until its replacement in 1975 by the Florida elective share, was a widow's (changed to "surviving spouse" in 1973) one-third interest in "fee simple of the real property which was owned by her husband at the time of his death" and an absolute one-third interest in all "personal property owned by her husband at the time of his death". Fla. Stat. Ann. sec. 731.34 (West 1964) (repealed 1974). The widow was also entitled to "mesne profits" on statutory dower, or income earned by the dower interest from the date of the election to take dower until the date of actual payment. Fla. Stat. Ann. sec. 733.12 (West 1964) (repealed 1974). Statutory dower was originally "free from all liability for the debts of the decedent and all costs, charges and expenses of administration". 1933 Fla. Laws ch. 16103, sec. 35. However, it was modified in 1939

---

[7] Our analysis of Florida statutory dower refers to the 1964 version, which was contemporaneous with Rev. Rul. 64-101, 1964-1 C.B.(Part 1) 77, modified by Rev. Rul. 71-167, 1971-1 C.B. 163. The Florida legislature modified statutory dower from time to time throughout the entire period that it was in force.

to render the widow's dower interest in personal property liable for secured debts, liens, mortgages, and other encumbrances. 1939 Fla. Laws ch. 18999, sec 1.

In 1975, the Florida legislature enacted the Florida Probate Code, which abolished statutory dower and replaced it with the Florida elective share, Fla. Stat. Ann. sec. 732.201 (West 1995), in its present form:  30 percent, Fla. Stat. Ann. sec. 732.207 (West 1995), of "all property of the decedent wherever located that is subject to administration except real property not located in Florida", Fla. Stat. Ann. sec. 732.206 (West 1995), valued "on the date of death", Fla. Stat. Ann. sec. 732.207 (West 1995).

The new elective share differed from statutory dower in 2 major respects.  Unlike dower, as to which only personal property was liable for secured debts, the elective share is calculated net of all liens, mortgages, and unsecured claims, Fla. Stat. Ann. sec. 732.207 (West 1995), including funeral expenses, Fla. Stat. Ann. sec. 731.201(4) (West 1995); Paredes v. McLucas, 561 So. 2d 439, 441 (Fla. Dist. Ct. App. 1990).  Second, the elective share does not accrue mesne profits; it does not participate in post mortem economic gains and losses and estate income, Price v. Florida Natl. Bank, 419 So. 2d 389, 390-391 (Fla. Dist. Ct. App. 1982), although the electing spouse is entitled to interest on

the share from the date of the order directing the personal representative to pay, id.

The elective share retains many fundamental attributes of statutory dower. See Hanley, Elective Share, in Basic Practice Under Florida Probate Code, sec. 7.1, at 275 (3d ed. 1987); Redfearn, Wills and Administration in Florida, sec. 19.3 (6th ed. 1986 & Supp. 1996). The Florida statutes governing the current elective share and statutory dower provide a virtually absolute right to the surviving spouse to elect to take the respective shares, Fla. Stat. Ann. sec. 732.201 (West 1995); Fla. Stat. Ann. sec. 731.34 (West 1964) (repealed 1974); Catlett v. Chesnut, 131 So. 120, 122 (Fla. 1930), both of which vest at death, In re Estate of Donner, 364 So. 2d 742, 751 (Fla. Dist. Ct. App. 1978) (dower vests at death); Fla. Stat. Ann. sec. 732.201 (West 1995) ("The surviving spouse of a person who dies domiciled in Florida shall have the right" to take her elective share). Like statutory dower, the elective share becomes a fixed claim against the estate as of the date of decedent's death, Wax v. Wilson, 101 So. 2d 54, 57 (Fla. Ct. App. 1958) (citing Catlett v. Chesnut, supra), of the amount determined by the Probate Court, Fla. Stat. Ann. sec. 732.214 (West 1995).

Under Florida law, payment of the elective share takes precedence over distributions to all other beneficiaries, including those receiving specific bequests, Fla. Stat. Ann. sec.

733.805(1) (West 1995), just as statutory dower took such precedence.  In re Malone's Estate, 54 So. 2d 248, 249 (Fla. 1951); Murphy v. Murphy, 170 So. 856, 874 (Fla. 1936); Catlett v. Chesnut, supra at 121.  Under Fla. Stat. Ann. sec. 733.805(1) (West 1995), "payment of debts, estate and inheritance taxes, family allowances, exempt property, elective share charges, expenses of administration, and devises" are to be paid, in the absence of specific provision in decedent's will, or designation of funds or property to be used, first from property not disposed of by the will and then, in turn, by residuary devises, "Property not specifically or demonstratively devised", and last by specific or demonstrative devises.[8]

Consistent with Fla. Stat. Ann. sec. 733.805(1) (West 1995), and the substantively identical legal characteristics of the Florida elective share and its predecessor, statutory dower, the Florida Supreme Court has interpreted the Florida elective share as effectively entitling the surviving spouse to the same longstanding legislative favor and senior status relative to

---

[8] Fla. Stat. Ann. sec. 733.805(1) (West 1995) honors provisions in a will for payments or transfers of assets in satisfaction of an elective share prior to the scheme described in the text.  Respondent concedes that property passing pursuant to such provisions would be excluded from the subchapter J distribution rules as a sec. 663(a)(1) specific bequest. Decedent made no such provisions in his will for payment of the elective share, although the Probate Court, in its Agreed Order, did include in petitioner's elective share the assets purportedly devised to petitioner under the will.

beneficiaries under the decedent's will that statutory dower enjoyed prior to 1974. <u>Via v. Putnam</u>, 656 So. 2d 460, 466 (Fla. 1995) (elective share); <u>In re Estate of Donner</u>, <u>supra</u> at 751-752 (dower); see also <u>Pawley v. Pawley</u>, 46 So. 2d 464, 472-473 n.2 (Fla. 1950). In <u>Via v. Putnam</u>, <u>supra</u>, the Florida Supreme Court recently concluded that the elective share and pretermitted spouse statutes give priority to the surviving spouse of a subsequent marriage over the contractual rights of the children of the decedent's prior marriage who are beneficiaries of their parents' mutual wills. The Court justified its holding as protecting the "`institution of marriage [that] has been a cornerstone of western civilization * * * and * * * the most important type of contract ever formed'". <u>Via v. Putnam</u>, <u>supra</u> at 465 (quoting <u>In re Estate of Yohn</u>, 238 So. 2d 290, 296 (Fla. 1970) (Boyd, J., concurring)).[9]

---

[9] The confirmation by <u>Via v. Putnam</u>, 656 So. 2d 460, 465 (Fla. 1995), of the continued favored status of the surviving spouse's interest in the elective share undercuts respondent's reliance on the Florida intermediate appellate decision in <u>Williams v. Harrington</u>, 460 So. 2d 533, 537 (Fla. Dist. Ct. App. 1984), for the proposition that payment of the Florida elective share is a sec. 662(a) distribution. The appellate court had held that the surviving spouse, having paid income tax upon receipt of her elective share, was not entitled to contribution from the estate's residuary beneficiaries. That decision was based upon the assumption that, since subchapter J was in effect when the Florida legislature enacted the current Probate Code, the Florida legislature must have intended that payments in satisfaction of the elective share would be treated as sec. 662(a) distributions. But see <u>Cooper v. Parkinson</u>, 186 So. 2d 844 (Fla. Dist. Ct. App. 1966) (enforced contract between

(continued...)

## 2.  Subchapter J Income Attribution Rules

The income attribution rules of subchapter J give effect to the distinction made by section 102 between gifts and inheritances of property, which are excluded from a recipient's gross income, sec. 102(a), and the income derived therefrom, sec. 102(b)(1), and gifts of income from property, sec. 102(b)(2); Irwin v. Gavit, 268 U.S. 161 (1925), which are included in a recipient's gross income.  Subchapter J retains the conduit principle of the 1939 Code to pass income from an estate or trust to its beneficiaries, see H. Rept. 1337, 83d Cong., 2d Sess. 61 (1954); Kitch v. Commissioner, 104 T.C. 1, 11 (1995), affd. on other grounds 103 F.3d 104 (10th Cir. 1996), while introducing the mechanism of DNI to determine the amount and character of that income "to avoid both the necessity of 'tracing' and an inquiry into the subjective intention of executors".  Harkness v. United States,  199 Ct. Cl. 721, 727, 469 F.2d 310, 316 (1973); see also H. Rept. 1337, supra; Kitch v. Commissioner, supra.  A distribution included in the gross income of a beneficiary under subchapter J is "treated * * * as a gift, bequest, devise, or inheritance of income from property."  Sec. 102(b).

---

[9](...continued)
recipient of Florida statutory dower and estate beneficiaries that those beneficiaries would reimburse her for Federal income tax paid by her on receipt of an advance payment of statutory dower).

a.  Application of Subchapter J Distribution Rules to Estates

Estates, which are not required to distribute currently all income received, are taxed only on income not actually distributed or required to be distributed to beneficiaries, secs. 641(a), 661, with a deduction for distributions included in beneficiaries' gross income under section 662, sec. 661(a).

Beneficiaries must include section 662 distributions in their gross income in 2 tiers:  First, "income * * * required to be distributed currently", sec. 662(a)(1); and, second, all "other amounts properly paid, credited, or required to be distributed", sec. 662(a)(2)(B).  DNI is ratably allocated among all first tier distributions, sec. 662(a)(1), and the balance is then ratably allocated among all second tier distributions, sec. 662(a)(2)(B).  Amounts distributed in excess of DNI are deemed to be distributions of corpus, passing to the beneficiary tax-free. Id.  In most cases, distributions by estates during administration are in the second tier.[10]

Section 663(a)(1) excludes payments of specific sums of money or specific property from the subchapter J estate, thus giving effect to the distinction made by State law between

---

[10] Payments in satisfaction of the Florida elective share are not first tier distributions inasmuch as the Florida Probate Code does not require that such transfers be made as distributions of current income.  Fla. Stat. Ann. sec. 732.207 (West 1995); see also Fla. Stat. Ann. sec. 731.34 (West 1964) (repealed 1974) (dower is one-third share in property).

specific bequests of property and bequests from the residuary estate, see, e.g., <u>Park Lake Presbyterian Church v. Estate of Henry</u>, 106 So. 2d 215, 217 (Fla. Dist. Ct. App. 1958). Although the Code does not expressly state that section 663(a)(1) gifts or bequests are excluded from a recipient's gross income under section 102(a), the regulations, section 1.102-1(d), Income Tax Regs., "acknowledge that they enjoy this status". 3 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, sec. 81.4.7 at 81-46 (2d ed. 1991 & Supp. No. 4 1996).[11]

### b. Section 662(a)(2)(B) Not All-Inclusive

The distribution rules of sections 661 and 662, and the exclusion for specific bequests provided by section 663(a)(1) do not exclusively govern the section 102 differentiation between nontaxable gifts and inheritances of property and taxable income from property. Because sections 661-663, found in subpart C of

---

[11] At the inception of the 1954 Code, the architects of subchapter J recognized that the statutory framework of secs. 661 through 663 could result in misattributions of estate income among estate beneficiaries. See Kamin, Surrey, & Warren "The Internal Revenue Code of 1954: Trusts, Estates and Beneficiaries", 54 Colum. L. Rev. 1237, 1258-1259 (1954); see also Fillman, "Selections from Subchapter J", 10 Tax L. Rev. 453, 454-455 (1955). Not long after enactment of subchapter J, statutory modifications were proposed in H.R. 9662, 86th Cong., 2d Sess. (1960), incorporating recommendations of a report by the Advisory Group on Subchapter J of the Internal Revenue Code of 1954, Final Report on Estates, Trusts, Beneficiaries, and Decedents (Comm. Print 1958), which would, among other things, have expanded the scope of the sec. 663(a)(1) exclusion of specific bequests and applied the separate share rule of sec. 663(c) to estates. However, the bill was never enacted.

subchapter J, do not expressly claim the attribute of
exclusiveness, they are not regarded as having that attribute.[12]
Under various judicial, regulatory, and administrative
exceptions, certain assets in which a decedent had an interest
are excluded from the subchapter J estate.  As a result, the
subchapter J distribution rules do not apply to their transfer or
receipt.[13]

In Petersen v. Commissioner, 35 T.C. 962 (1961), we held
that subchapter J distributions do not include income generated
by property held in joint and survivorship tenancies because the
decedent's interest ceases to exist at death, supplanted by the
surviving joint tenant's interest, leaving nothing for the estate
to administer.  Id. at 967-968; see also Lang v. Commissioner,
289 U.S. 109, 110 (1933) (tenancy by the entirety); Edmonds v.

---

[12] This is in contrast to secs. 671-679, found in subpart E
of subchapter J (concerning the income tax treatment of grantor
trusts), which are expressly granted the attribute of
exclusiveness by the last sentence of sec. 671.  See H. Rept.
1337 83d Cong., 2d Sess. A212 (1954); sec. 1.671-1(c), Income Tax
Regs.

[13] Secs. 661 and 662 also do not govern situations in which
those sections conflict with more specific Code sections in
subchapter J, such as section 691, concerning income in respect
of a decedent, Rollert Residuary Trust v. Commissioner, 80 T.C.
619 (1983), affd. 752 F.2d 1128 (6th Cir. 1985), section 682,
concerning income of an estate in cases of divorce, Kitch v.
Commissioner, 104 T.C. 1 (1995), affd. on other grounds 103 F.3d
104 (10th Cir. 1996), and section 642(c), concerning the
charitable deduction for estates and trusts, Mott v. United
States, 199 Ct. Cl. 127, 462 F.2d 512 (1972).

Commissioner, 90 F.2d 14, 16 (9th Cir. 1937), affg. 31 B.T.A. 962 (1934) (joint and survivorship tenancy).[14]

Similarly, funds deposited in joint and survivorship bank accounts, title to which passes to the survivor under State law, while included in a decedent's gross estate for Federal transfer tax purposes, sec. 2040; sec. 20.2040-1(b), Estate Tax Regs., pass outside the subchapter J estate because the funds are not subject to estate administration. Petersen v. Commissioner, supra. Proceeds of life insurance policies, sec. 101(a); sec. 1.101-1(a), Income Tax Regs., Totten trusts, or savings bank account trusts, property held in revocable trusts that terminate at death whose corpus is transferred to named beneficiaries, and property held in irrevocable trusts over which decedent retained a life interest are other instances of property includable in a decedent's gross estate for estate tax purposes, see secs. 2036 (transfers with retained life estates); 2037 (transfers taking effect at death); 2038 (revocable transfers); 2042 (proceeds of life insurance), none of the payments or distributions of which are included in section 661 and 662 distributions. See Zaritsky

---

[14] Citing Petersen v. Commissioner, 35 T.C. 962 (1961), the Commissioner later published Rev. Rul. 62-116, 1962-2 C.B. 207, 208, under which the exclusion of income derived from property from the subchapter J estate was based upon whether the property was subject to estate administration and possession by the estate administrator. See also Ferguson et al., supra secs. 1.3.2.2-1 to 1.3.2.3, at 1:22-23.

& Lane, supra sec. 1.06 at 1-12 to 1-13.[15]  In each of these preceding instances, Federal income tax treatment takes into account the legal and economic characteristics of the property interest under State law by excluding the transfer of such property from the subchapter J distribution rules.

Section 1.661(a)-2(e), Income Tax Regs., limits the scope of section 662(a)(2)(B) by excluding from second tier distributions all transfers of a decedent's fee simple interest in real property to heirs, legatees, or devisees when title passes directly under State law upon decedent's death.  Specific devises by a decedent of real property the title to which passes directly at his death, which might otherwise be excluded from subchapter J property under an expansive reading of section 663(a)(1), are instead excluded from second tier distributions because they do "not constitute an amount paid, credited, or required to be distributed under section 661".  Sec. 1.663(a)-1(c)(1)(ii), Income Tax Regs.

The Commissioner has also ruled that a transfer of real property, which would otherwise be part of the residuary estate,

_____

[15] The Code also provides for other exclusions from the subchapter J distribution rules such as lump-sum rollovers of a decedent's IRA assets to the IRA of a surviving spouse, secs. 401(a)(9)(B)(iv), 408(a)(6), and the "successor in interest" regulations of sec. 1.706-1(c)(3)(iii), Income Tax Regs. Sec. 706(c)(2)(A), as amended by Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1246(a), 111 Stat. 788, 1030, has been modified to end the tax year of a partnership year with respect to the death of a partner for tax years beginning after Dec. 31, 1997.

is also excluded from the subchapter J estate when title to such property passes directly to an heir or devisee. "[E]ven though the real property is in the possession of the executor or administrator during the period of administration", such transfers are subject only "to the general provisions of section 102 of the Code." Rev. Rul. 68-49, 1968-1 C.B. 304, 305; cf. Rev. Rul. 62-116, 1962-2 C.B. 207.

In Rev. Rul. 64-101, 1964-1 C.B. (Part 1) 77, relied upon by petitioner, the Commissioner advanced the broad exclusion of real property as the primary ground for similarly excluding payment of Florida statutory dower from section 662(a)(2)(B) distributions. The Commissioner primarily justified the exclusion of dower by its similarities in "legal characteristics to the real property exception provided in" section 1.661(a)-2(e), Income Tax Regs. Rev. Rul. 64-101, 1964-1 C.B. (Part 1) at 79. The Commissioner went on to declare that the statutory "dower interest might be even more absolute than real property * * * since real property * * * might be liable for debts of the estate."[16] Id.

_____

[16] In 1964, the personal property portion of Florida statutory dower was liable for secured debts of the estate, while real property was not so liable. Fla. Stat. Ann. sec. 731.34 (West 1964) (repealed 1974); 1939 Fla. Laws ch. 18999, sec. 1. In contrast, the entire Florida elective share, both real and personal property, is reduced by both secured and unsecured claims. Fla. Stat. Ann. sec. 732.207 (West 1995). Rev. Rul. 64-101, 1964-1 C.B. (Part 1) 77, to the extent that it reflects an assumption that none of the statutory dower interest could be subject to secured debts, misreads Florida law. However, it

(continued...)

Rev. Rul. 64-101, 1964-1 C.B. (Part 1) at 78, also cited similarities in "purpose and effect" between statutory dower and temporary family support allowances payable from corpus, which were excluded from the subchapter J estate under section 1.661(a)-2(e), Income Tax Regs., at the time Rev. Rul. 64-101, 1964-1 C.B. (Part 1) 77, was published.  However, Estate of McCoy v. Commissioner, 50 T.C. 562 (1968), held invalid that portion of section 1.661(a)-2(e), Income Tax Regs., and the regulation was accordingly modified.[17]  Nevertheless, in modifying the portion of the regulation dealing with family support allowances, the Commissioner did not retract support for the exclusion of statutory dower from the subchapter J estate on the ground of its legal similarity to real property whose title directly vests in a

---

[16](...continued)
obviously does not rely upon that reading inasmuch as it relies upon the similarity of statutory dower to real property, passage of title to which is subject to debts secured by mortgages and other liens.

[17] Under sec. 1.661(a)-2(e), Income Tax Regs., as it currently reads, temporary family and surviving spouse support allowances, whether payable from income or corpus under local law, are included in a beneficiary's gross income as second tier distributions.  Secs. 1.662(a)-2(e), 1.662(a)-3(b), Income Tax Regs.  But see Ferguson et al., supra sec. 6.10 at 6:19, which distinguishes between statutory nonvested family support allowances, which may be awarded at the discretion of the presiding court, Estate of Cunha v. Commissioner, 279 F.2d 292, 297 (9th Cir. 1960), affg. 30 T.C. 812 (1958), and are included in subchapter J distributions, and vested family support allowances, which are excluded.

devisee.[18]  Thus, Rev. Rul. 64-101, 1964-1 C.B. (Part 1) 77,

continued to have vitality insofar as it relied upon the real

property exception of section 1.661(a)-2(e), Income Tax Regs., to

justify the exclusion of Florida statutory dower from subchapter

J distributions.

3.  Exclusion of Statutory Dower From Surviving Spouse's Gross
Income Requires Exclusion of Elective Share

Several legal and economic characteristics of statutory

dower virtually replicate the characteristics of transfers of

decedents' real property.  Both are rights to property, Fla.

Stat. Ann. sec. 731.34 (West 1964) (repealed 1974), that vest in

the recipient at decedent's death, Emmerson v. Merritt, 94 N.E.

955, 956 (Ill. 1911) (real property vests at death); Jones v.

Federal Farm Mortgage Corp., 182 So. 226, 227 (Fla. 1938) (same);

In re Estate of Donner, 364 So. 2d at 751 (dower vests at death).

While both rights of succession share antecedents rooted in the

common law, they have both evolved into transfers at death whose

rights and limitations now are a matter of legislative

discretion.  Irving Trust Co. v. Day, 314 U.S. 556, 562 (1942);

Coral Gables First Natl. Bank v. Hart, 20 So. 2d 647, 649 (Fla.

1945) (devolution is a matter of legislative discretion).  The

most significant limitation on both interests is liability for

_____

[18] See T.D. 7287, 1973-2 C.B. 210 (transmittal memorandum
for proposed change to sec. 1.661(a)-2(e), Income Tax Regs., from
IRS to Assistant Secretary of Treasury for Tax Policy).

decedent's debts. See, e.g., Fla. Stat. Ann. sec. 733.613 (West 1995) (power of sale over real property to pay debts); Fla. Stat. Ann. sec. 731.34 (West 1964) (repealed 1974) (personalty liable for decedent's secured debts after 1939).

The Commissioner's ruling in Rev. Rul. 64-101, 1964-1 C.B. (Part 1) 77, confirmed that the longstanding practice of excluding dower from a widow's gross income under the 1939 Code and earlier revenue acts would be continued under the 1954 Code. 6 Merten's Law of Federal Income Taxation, sec. 36.81 at 390 (1949) ("Amounts received as dower by a widow are not taxable" under the 1939 Code). There is no evidence in the legislative history of the 1954 Code that Congress intended to reverse the exclusion when it enacted subchapter J.[19] That exclusion ensures that the surviving spouse will incur no income tax liability by

_____

[19] In Lemle v. United States, 419 F. Supp. 68, 71 (S.D.N.Y. 1976), affd. on another ground 579 F.2d 185 (2d Cir. 1978), the District Court expressed the view that payment of a former version of the New York elective share, which was entitled to share in estate income, resulted in sec. 662 distributions to the surviving spouse, is distinguishable. The Court of Appeals for the Second Circuit framed the issue in Lemle as "whether, having already received payments out of estate income, * * * [the taxpayer, a surviving spouse] can, by subsequent compromise agreement, recharacterize them as payments of principal" Lemle v. United States, 579 F.2d at 188, when she and her husband's estate subsequently settled her right to the New York elective share. The Court of Appeals decided that the taxpayer could not do so. Id.; cf. Delmar v. Commissioner, 25 T.C. 1015, 1021-1022 (1956) (income received as part of settlement in lieu of a statutory forced share, which was entitled to share in estate income under Illinois law, was taxable to the surviving spouse under sec. 162(c) of the 1939 Code).

reason of the transfer to her of property in satisfaction of statutory dower in excess of any tax liability incurred by reason of her receipt of mesne profits.  The exclusion is also consistent with the longstanding solicitude of the Florida legislature towards the economic interests of the surviving spouse that has been repeatedly implemented by the Florida Supreme Court.  See, e.g., Via v. Putnam, 656 So. 2d 460 (Fla. 1995); In re Malone's Estate, 54 So. 2d at 249; Pawley v. Pawley, 46 So. 2d 464 (Fla. 1950); Catlett v. Chesnut, 131 So. at 121; In re Estate of Donner, 364 So. 2d 742 (Fla. Dist. Ct. App. 1978).[20]

The Florida elective share possesses the same legal and economic characteristics as statutory dower and real property.  A surviving spouse's right to her elective share arises from local law, vests at decedent's death, Fla. Stat. Ann. sec. 732.201 (West 1995), and is similarly subject to certain limitations, see e.g., Fla. Stat. Ann. sec. 732.207 (West 1995) (elective share calculated net of decedent's debts).  The surviving spouse who elects to take her Florida elective share enjoys, for purposes of payment of her share, the same precedence over other estate beneficiaries as was enjoyed by a widow who elected to take statutory dower.  Via v. Putnam, supra at 466.

---

[20] See G.C.M. 32485 (Jan. 15, 1963) (referring to the solicitude of State legislatures for the rights of surviving spouses and expressing the view that exclusion of statutory dower under 1954 Code is consistent with the exclusion in practice under the 1939 Code).

Moreover, the Florida elective share, unlike statutory dower, does not share in income of the estate, or mesne profits, nor is it entitled to interest from the estate prior to the date distribution is ordered by the Probate Court, Price v. Florida Natl. Bank, 419 So. 2d at 390-391. This is because Fla. Stat. Ann. sec. 732.207 (West 1995), fixes the amount as of the date of decedent's death without any other express statutory provision for income to accrue. A transfer of statutory dower to a surviving spouse included both property and mesne profits and the surviving spouse incurred an income tax liability under section 102(b) to the extent of the mesne profits.[21] The fact that the surviving spouse who elects the Florida elective share incurs no similar income tax liability because she is not entitled to enjoy

---

[21] In Rev. Rul. 71-167, 1971-1 C.B. 163, the Commissioner modified Rev. Rul. 64-101, 1964-1 C.B. (Part 1) at 78 which had included mesne profits in the widow's income as a "gift, bequest, devise, or inheritance * * * of income from property" under section 102(b), to express the view that mesne profits are instead included in the estate's gross income and that payments of mesne profits earned by dower assets are includable in the gross income of the widow under sec. 662(a), and deductible by the estate under sec. 661(a). Inasmuch as the Florida elective share does not have any income component, we express no view on the correctness of Rev. Rul. 71-167, 1971-1 C.B. 163, with respect to the transfer to a surviving spouse of income earned by a statutory forced share. We also express no view on whether the calculus of factors leading to our holding that the Florida elective share is excluded from second tier distributions would change were the share to have an income component, other than to observe that the lack of entitlement to income means that the Florida elective share consists entirely of property for estate accounting purposes.

any portion of estate income only confirms that the payment of the Florida elective share is not a subchapter J distribution.

The dissociation of the Florida elective share from estate income is illustrated in the case at hand by the following catalog of the respective interests of the surviving spouse and the residuary beneficiaries of the Deutsch estate in various categories of 1989 estate income.

In 1989, the estate received $152,910 in interest and dividends. Petitioner had no right to receive, participate in, or enjoy any of these items because the estate received them after decedent's death; the Probate Court fixed the value and amount of the elective share as of the date of decedent's death. Fla. Stat. Ann. secs. 732.207, 732.214 (West 1995). Furthermore, the estate received some of those items of income after it had paid petitioner on November 3, 1989, bearing in mind that the estate's taxable year was the entire calendar year 1989.

The estate also realized $176,432 in net capital gains that, because decedent's assets received a step-up in basis at his death to fair market value, sec. 1014(a), measured appreciation in estate assets only from the date of death until sale. Petitioner enjoyed no benefits from that post mortem appreciation because her share was valued as of the date of decedent's death. Fla. Stat. Ann. sec. 732.207 (West 1995). Although the assets whose sale generated the gains were realized in order to enable

the estate to pay petitioner's elective share, the economic benefit of those gains inured solely to the estate and its residuary beneficiaries, Mr. Deutsch and his sisters. Mr. Deutsch's purported allocation of capital gains to income, whatever its effect for estate accounting purposes, had no practical consequence whatsoever with respect to the relative entitlements of petitioner and the residuary beneficiaries.

The largest components of the estate's 1989 DNI, totaling $377,753, were the distributions to the estate from decedent's IRA's. The bulk of the income from the IRA's represented the proceeds of decedent's lifetime accumulations of deferred compensation and were included in estate principal under Florida law. Fla. Stat. Ann. sec. 738.04(c) (West 1995). Although petitioner had an economic interest equal to 30 percent of the value of the IRA's reflected in the amount of the elective share, the remaining 70 percent redounded to the benefit of the residuary beneficiaries. Neither subchapter J, nor the income tax law generally, provides for allocating income between petitioner on the one hand, and the estate and its beneficiaries on the other, on the basis of their proportionate economic interests therein. Because the quantitative interest of the estate and its residuary beneficiaries in the income from the IRA's is more than twice as large as petitioner's interest

therein, the entire amount of that income should remain with the estate.[22]

Section 662(a)(2)(B) does not exclusively govern all transfers by a decedent's estate that are not otherwise governed by section 662(a)(1) and section 662(a)(2)(A) as income required to be distributed currently. Second tier distributions do not include interests in joint tenancies, income derived therefrom, transfers at decedent's death of title to real property, or payments in satisfaction of statutory dower, all of which share a number of legal and economic characteristics. In Rev. Rul. 64-101, 1964-1 C.B.(Part 1) 77, the Commissioner has conceded that statutory dower is properly excluded from second tier distributions under the 1954 Code, just as payments for statutory forced shares were excluded from distributions of estate income under the 1939 Code and earlier revenue acts.[23] The same must hold true of petitioner's Florida elective share.

---

[22] When more than one person has dealings or interests with respect to an item of income, the relative interests must be weighed, and the item attributed to the person whose relationship thereto is most significant for income tax purposes. The Code does not allocate income between such persons on some ratio derived from the importance of their various interests. This basic principle was first articulated in American Law Institute Tentative Draft No. 1, 8-11, Apr. 15, 1949, a major departure point for what eventually was enacted as the 1954 Code. See also Surrey & Warren, Federal Income Taxation 956 (1960).

[23] See supra note 20 and accompanying text.

We conclude that payment to the surviving spouse in satisfaction of the Florida elective share is not a distribution within the meaning of sections 661(a) and 662(a)(2)(B). Petitioner is not required to include any part of the payment of her Florida elective share in gross income.

<u>Decision will be entered</u>

<u>for petitioner</u>.